Argued and submitted August 5, 1998, affirmed October 13, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES ELLSWORTH GRIMES,
*Appellant.*

(971089; CA A98643)

986 P2d 1290

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally Avera, Public Defender.

Timothy Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for attempted unlawful sexual penetration in the first degree. ORS 163.411. His principal contention is that the trial court erred in applying ORS 137.750 to prevent him from being eligible for good-time sentence reduction. According to defendant, because ORS 137.750 was not enacted until after he committed his crime, application of the statute to his case violates state and federal prohibitions against *ex post facto* laws. We conclude that the application of ORS 137.750 to this case does not violate either state or federal *ex post facto* clauses and affirm.

The relevant facts are not in dispute. On April 25, 1997, defendant fondled his five-year-old victim and then exposed himself to her and her four-year-old sister. He was charged with sexual abuse in the first degree and endangering the welfare of a minor. At the time he committed those acts, Ballot Measure 40 was in effect. Ballot Measure 40, among other things, barred administrative agencies from reducing a prison sentence imposed in open court unless the sentencing court expressly authorized the agency to do so.

On June 12, 1997, the legislature enacted Senate Bill 936. The bill contained an emergency clause and took effect that same day. Section 14 of the bill, which is now codified at ORS 137.750, provides, in part:

"(1) When a court sentences a defendant to a term of incarceration upon conviction of a crime, the court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release, alternative incarceration program or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible at the time of sentencing, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or programs.

"(2) The executing or releasing authority may consider the defendant for the programs described in subsection (1)

of this section only upon order of the sentencing court appearing in the judgment."

Section 38 expressly provides that section 14 applies to all crimes committed on or after December 5, 1996. Or Laws 1997, ch 313, § 38.

On June 20, 1997, pursuant to a plea bargain, the indictment was dismissed, and defendant pleaded no contest to an information charging him with attempted unlawful sexual penetration in the first degree. The trial court imposed a 40-month prison sentence and ordered that, pursuant to ORS 137.750(1), defendant be denied any form of early release on the sentence imposed. Defendant objected, arguing that applying ORS 137.750 to him violated state and federal *ex post facto* clauses. The trial court overruled defendant's objection.

Defendant appeals, reasserting his *ex post facto* arguments. The state initially argued that the application of ORS 137.750 to this case cannot amount to an *ex post facto* violation, because the statute does no more than what is required by Ballot Measure 40, which was enacted before defendant committed his crime. Meanwhile, in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), the Oregon Supreme Court declared that Ballot Measure 40 was unconstitutional in its entirety. Following the court's decision, the parties submitted supplemental briefs. The state now argues that the state and federal *ex post facto* clauses do not prohibit application of a "new and generally ameliorative statute that was enacted to replace a statute that was in force when the defendant committed his crime and that later was declared invalid." In support of that argument, the state relies on *Dobbert v. Florida*, 432 US 282, 97 S Ct 2290, 53 L Ed 2d 344 (1977), and *State v. Perez*, 119 Or App 436, 851 P2d 617, *rev den* 317 Or 272 (1993). Defendant acknowledges the holdings of both cases, but insists that they are distinguishable, because, unlike *Armatta*, in which the court declared a constitutional provision invalid *ab initio*, *Dobbert* and *Perez* involved statutes that were declared invalid.

Article I, section 21, of the Oregon Constitution, provides that "[n]o *ex-post facto* law * * * shall ever be passed."

Article I, section 10, of the United States Constitution, likewise provides that "No State shall * * * pass any * * * ex post facto Law." The Oregon Supreme Court has held that the scope of the two clauses is essentially identical. *State v. Wille,* 317 Or 487, 502, 858 P2d 128 (1993) ("we construe these particular state and federal provisions without distinguishing them"). In *State v. Cookman,* 324 Or 19, 920 P2d 1086 (1996), the court examined the language, history, and case law construing the state provision independent of the federal counterpart. That examination produced no new state constitutional analysis. *See id.* at 33 ("The majority begins its *ex post facto* analysis by asserting (correctly, I believe) that the scope of Article I, section 21, is the same as the historical scope of Article I, section 10, of the federal constitution.") (Gillette, J., concurring in part, dissenting in part).

■    Under both state and federal *ex post facto* clauses, three categories of retroactive penal laws are prohibited:

> "(1) laws that punish acts that were legal before the enactment of those laws; (2) laws that impose greater or additional punishment than that available before the enactments of those laws; and (3) laws that deprive the defendant of a defense."

*Cookman,* 324 Or at 31; *see also Collins v. Youngblood,* 497 US 37, 42, 110 S Ct 2715, 111 L Ed 2d 30 (1990). In this case, defendant contends that ORS 137.750—or at least the application of that law to this case—falls within the second category, because the statute has the effect of lengthening his sentence beyond what it otherwise would have been.

In *Dobbert,* the defendant was charged with, among other things, first-degree murder. At the time he committed the crime, Florida state law required the death penalty for first-degree murder convictions unless the verdict included a recommendation of mercy by a majority of the jury. After the defendant committed the crime, but before he was sentenced, the Florida Supreme Court declared the death-penalty statute to be unconstitutional. The Florida Legislature then enacted a new death-penalty statute, which provides for a separate sentencing hearing before the trial judge and the

jury, at which evidence of aggravating or mitigating circumstances must be admitted. The jury is then permitted to render an advisory opinion, and the judge is required to impose sentence upon consideration of the jury's opinion. If the court imposes a sentence of death, then it must set forth findings concerning the aggravating or mitigating circumstances. The defendant was sentenced to death under the new statute. He objected to the imposition of the sentence as a violation of the federal *ex post facto* prohibition.

The United States Supreme Court held that the application of the new death-penalty statute did not violate the federal *ex post facto* clause. The Court reasoned that the change in the law from the earlier death-penalty statute to the new statute was "on the whole ameliorative," and did not actually alter the quantum of punishment itself. *Dobbert*, 432 US at 292-94. Under the earlier statute, the Court held, the penalty for first-degree murder was death, and, under the new statute, the punishment is the same. Any changes from one statute to the other were "clearly procedural" and, if anything, favored the defendant. The Court observed that, under the earlier statute, the death penalty was presumed unless the jury recommended otherwise, whereas, under the new statute, no such presumption pertains. *Id.* at 294-95.

The defendant objected that the Court could not compare the old and new death-penalty statutes, because the former had been declared unconstitutional. Indeed, the defendant argued, at the time he committed his crime, there was no death penalty "in effect," because the earlier statute had been declared unconstitutional and thus was void *ab initio*. The Court rejected that contention as "highly technical" and "sophistic." *Id.* at 297. The Court explained:

> "Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder.

> "* * * * *

"[T]he existence of the statute served as an 'operative fact' to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the ex post facto provision of the United States Constitution."

*Id.* at 297-98.

In *Perez*, we confronted a similar set of facts and reached the same result. The defendant was charged with delivery of a controlled substance and with possession of a controlled substance. At the time he committed the crimes, state law permitted enhanced penalties for possession and delivery offenses that occurred as part of a drug delivery "scheme or network." OAR 253-004-0002(3). The indictment charged the defendant with having committed his crimes as part of a scheme or network.

After the defendant was charged, the "scheme or network" provision of the sentencing regulations was declared unconstitutionally vague. Shortly after that, the legislature enacted ORS 475.996, which superseded the "scheme or network" provision and provided for enhanced penalties for delivery of a controlled substance if the crime involved a substantial quantity of a controlled substance or if it was a "commercial drug offense," as defined by state law. The new statute also provided for enhanced penalties for possession of a controlled substance in excess of a specified quantity. The state then dismissed the original indictment and reindicted the defendant under the new statute. The defendant demurred to the new indictment on *ex post facto* grounds. The trial court overruled the demurrer.

We affirmed. Relying on *Dobbert*, we held that the application of the new statute to the defendant posed no *ex post facto* problem, because the new statute did not actually enhance the quantum of punishment for the relevant offenses. *Perez*, 119 Or App at 439-40. The old statute provided for a specified enhanced penalty, and the new statute provided for the same enhancement. The difference between the two statutes was that the latter *limited* the scope of the enhancement factors so that the new legislation provided the defendant with "more protection," not less. *Id.* at 440-41.

As for the argument that there was no older statute with which to compare the newer one—because the older statute had been declared unconstitutional—we quoted the Supreme Court's conclusion in *Dobbert* that, regardless of the ultimate fate of the older statute, the fact remained that, while it was "in effect," it provided "fair warning" as to the state's intentions with respect to the crime involved. *Perez*, 119 Or App at 440 (quoting *Dobbert*, 432 US at 297).

■    This case is controlled by *Dobbert* and *Perez*. The statute at issue, ORS 137.750, does not increase the quantum of punishment from what was required at the time defendant committed his crime. Instead, as in *Dobbert* and *Perez*, the effect of the new statute is ameliorative, providing defendant with more protection, not less, than previously available.

At the time defendant committed his crime, Ballot Measure 40 provided that "no law shall permit a sentence imposed by a judge in open court to be set aside or otherwise not carried out except through the reprieve, commutation, and pardon power of the governor or pursuant to appellate or post-conviction relief." Ballot Measure 40, § 42(1)(j) (1996). In other words, a sentence imposed in open court could not be reduced by an administrative agency, such as the parole board and the Department of Corrections, except when the sentencing court expressly permitted such a reduction in the sentence itself.[1] Moreover, the measure imposed no qualifications on the authority of the trial court to decline to permit the reduction.

ORS 137.750, in contrast, gives the sentencing court no such unbounded discretion to deny the possibility of early release. It requires the court to order that a defendant be considered for good time or other early release programs unless the court finds "substantial and compelling reasons" to order otherwise. Thus, as in *Dobbert* and *Perez*, the more recent statute actually is more favorable to defendant than was the

---

[1] The legislative history—reflected in statements published in the 1996 Voters' Pamphlet—confirms that the intended effect of the provision was to ensure that "[f]or violent criminals, Oregon would carry out sentences imposed in open court with no reductions for 'good time,' " and that agencies would be prohibited from making "bureaucratic decisions that are hidden from public scrutiny that lessen the convicted criminal's actual sentence."

statute that was in effect at the time defendant committed his crime. ORS 137.750 certainly does not increase the quantum of punishment from what was required under Ballot Measure 40. It follows that there can be no *ex post facto* violation in applying ORS 137.750 to defendant in this case.

Defendant argues that Ballot Measure 40 cannot be the reference point for determining the extent to which ORS 137.750 imposes a greater punishment, because Ballot Measure 40 was declared unconstitutional. The very same argument was raised and rejected both in *Dobbert* and *Perez*.

■ Defendant insists that both cases are distinguishable, because they involved mere statutes that were declared unconstitutional on substantive grounds, in contrast with Ballot Measure 40, which was declared unconstitutional on procedural grounds and thus was unconstitutional *ab initio*. Defendant suggests a distinction without a difference, however. The effect of declaring a statute unconstitutional—whether on substantive or procedural grounds—is to render it void *ab initio*. *See, e.g., State v. Hays*, 155 Or App 41, 48, 964 P2d 1042, *rev den* 328 Or 40 (1998), *cert den* ___ US ___, 119 S Ct 2344, 144 L Ed 2d 240 (1999) (statute declared unconstitutional was void *ab initio*). The United States Supreme Court recognized that in *Dobbert*, but held that, whatever the technical legal effect of a later decision declaring a statute unconstitutional, until that decision, the statute still serves as a real-world "operative fact" that warned the public of the state's intentions with respect to the crime at issue. 432 US at 297-98. We recognized, and adopted, the same reasoning in *Perez*, and we decline to reexamine it in this case. We therefore conclude that the trial court did not err in applying ORS 137.750.

Defendant raises other assignments of error, which we reject without discussion.

Affirmed.