Argued and submitted October 14, 1999, decision of Court of Appeals reversed and case remanded to Court of Appeals for further proceedings June 8, 2001

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## STEVEN GLEN FUGATE,
*Petitioner on Review.*

(CC 96-0660-C; CA A96628; SC S45976)

26 P3d 802

Peter Gartlan, Chief Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief were David E. Groom, Oregon Public Defender, Jesse Wm. Barton, Deputy Public Defender, Robin A. Jones, Deputy Public Defender, Anne Morrison, Deputy Public Defender, and Andy Simrin, Deputy Public Defender.

Kaye E. McDonald, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Durham, Kulongoski, and Leeson, Justices.**

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of the case; Riggs and De Muniz, JJ., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is a criminal case in which defendant was charged with driving while under the influence of intoxicants (DUII). ORS 813.010. Defendant filed a pretrial motion to suppress any evidence of his impairment due to alcohol, arguing that any such evidence was obtained only because the arresting officer exceeded the permissible scope of the traffic stop that preceded defendant's arrest. *See* ORS 810.410(3)(b) (1995) (limiting scope of traffic stop). The trial court granted defendant's motion to suppress. On appeal, the state asserted, *inter alia*, that Oregon Laws 1997, chapter 313 (hereafter referred to as SB (Senate Bill) 936), which the 1997 Legislature enacted after the trial court's decision, applied to the case and required reversal of the trial court's order. Defendant, relying on various constitutional grounds, responded that SB 936 could not be applied to his case. A divided Court of Appeals, sitting en banc, disagreed with defendant, agreed with the state, and reversed the order of the trial court. *State v. Fugate*, 154 Or App 643, 963 P2d 686, *modified and adhered to on recons* 156 Or App 609, 969 P2d 395 (1998). We allowed defendant's petition for review. We now conclude that, although SB 936 is constitutional on its face, the part of SB 936 on which the state relies may not be applied retroactively to defendant's case. We therefore reverse the decision of the Court of Appeals and remand the case to that court to consider the state's remaining assignments of error.

## I. FACTS AND BACKGROUND

We take our statement of facts from those found by the trial court. On February 11, 1996,[1] a police officer stopped the vehicle that defendant was driving because it did not have a license plate light and because a records check indicated that the driving privileges of the vehicle's registered owner were suspended. The officer asked for and obtained identification from defendant and his three passengers. A check revealed that there was an outstanding arrest warrant for one passenger. The officer went to speak to that passenger. While doing so, the officer saw a nylon pouch that he

---

[1] The date is not discussed in the trial court's opinion, but is not disputed.

thought was a gun holster. He seized the pouch, which turned out to contain a spoon with white residue on it. The officer then ordered everyone out of the vehicle. It was at that point that the officer observed things about defendant's phys- ical condition that led him to arrest defendant for DUII.

At a pretrial hearing on his motion to suppress evidence, defendant argued that the officer had expanded the stop of the vehicle that defendant had been driving beyond what was necessary to issue the pertinent traffic citation. Defendant reasoned that that expansion violated ORS 810.410(3)(b) (1995)[2] and that the evidence obtained against him therefore should be suppressed. *See State v. Dominguez-Martinez,* 321 Or 206, 895 P2d 306 (1995) (holding that evidence derived from violation of ORS 810.410(3)(b) must be suppressed). As noted, the trial court agreed. On February 27, 1997, the court entered an order suppressing the evidence.

The state appealed the trial court's order to the Court of Appeals. In that court, the state argued, *inter alia,* that suppression of evidence for violation of ORS 810.410(3)(b) (1995) no longer was appropriate because of the recent passage of SB 936.[3] Section 1 of SB 936, now ORS 136.432, provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution; ·

---

[2] ORS 810.410 (1995) provided, in part:

"(3) A police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation.

"(c) May make an arrest of a person as authorized by ORS 133.310(2) if the person is stopped and detained pursuant to the authority of this section."

[3] The 1997 Legislature enacted SB 936. The act became effective on June 12, 1997. Or Laws 1997, v 1, at 728.

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Section 38 of SB 936 states that its provisions (other than those expressly specified) apply "to all criminal actions pending or commenced on or after December 5, 1996." Or Laws 1997, ch 313, § 38. Section 1 falls within that default provision. The present case had not yet come to trial, *i.e.*, was pending on that date. Thus, by its terms, SB 936 applies to defendant's case, unless some other source of law prevents it from being applied in that manner. In this court, defendant argues that there are such other sources of law. Before we turn to his arguments, however, a review of the history surrounding the enactment of SB 936 is helpful.

SB 936 is a legislative paraphrase of selected provisions of an amendment to the Oregon Constitution that was known as Ballot Measure 40 (1996). Measure 40 was approved by the people at the 1996 general election and became Article I, section 42, of the Oregon Constitution. Or Laws 1997, v 1, at ix-x. Measure 40 became effective on December 5, 1996. Measure 40 modified several parts of the Oregon Constitution relating to the criminal law. In *Armatta v. Kitzhaber*, 327 Or 250, 254-55, 959 P2d 49 (1998), this court summarized Measure 40 as follows:

"Measure 40 was submitted to the voters as an initiated amendment to Article I of the Oregon Constitution. According to its preamble, Measure 40 'is designed to preserve and protect **crime victims' rights** to justice and due process and to ensure the prosecution and conviction of persons who have committed criminal acts.' (Boldface in original.)

"The measure contains nine sections. Section 1 lists the following rights to which victims of crime are entitled in all criminal prosecutions and juvenile delinquency proceedings: (1) rights relating to pretrial detention and release of criminal defendants; (2) the right to be notified of certain stages of criminal proceedings and the right to be present and heard; (3) the right to information about the conviction, sentencing, imprisonment, criminal history, and future release of criminal defendants; (4) the right to refuse to participate in criminal defendants' discovery requests; (5) the right to receive prompt restitution; (6) the right to have all

relevant evidence admitted against criminal defendants; (7) the right to have criminal defendants tried by a jury composed of jurors who are registered voters and who have not been convicted of a felony or served a felony sentence within the last 15 years; (8) the right to have criminal defendants convicted by a jury vote of 11 to 1 in aggravated murder and murder cases; (9) the right to receive prepared copies of court transcripts; (10) the right to have criminal defendants serve their sentences in full, without such sentences being set aside, except through the governor's reprieve, commutation, or pardon power, or pursuant to appellate or post-conviction relief; (11) the right to have convicted criminals sentenced consecutively for crimes against different victims; (12) the right to joinder of charges against criminal defendants; (13) the right to be consulted during plea negotiations in certain cases; and (14) the right to notification of the foregoing rights as soon as reasonably practicable. Measure 40, §§ (1)(a) to (n).

"Section (2) of Measure 40 declares that the rights set out in the measure 'shall be limited only to the extent required by the United States Constitution,' that Article I, sections 9 and 12, of the Oregon Constitution, 'shall not be construed more broadly than the United States Constitution,' and that, in cases involving victims, 'the validity of prior convictions shall not be litigated except to the extent required by the United States Constitution.' Section (3) provides that the measure 'shall not reduce a criminal defendant's rights under the United States Constitution, reduce any existing right of the press, or affect any existing statutory rule relating to privilege or hearsay.'

"Section (4) of Measure 40 declares that the decision to initiate criminal prosecutions or juvenile delinquency proceedings rests with the district attorney and gives the district attorney the authority to assert the rights conferred upon victims in the measure. Sections (5) to (8) define the terms 'victim' and 'relevant evidence' for purposes of Measure 40, and clarify various matters relating to the rights conferred in the measure. Finally, section (9) states that Measure 40 creates no new civil liabilities."

327 Or at 254-55.

Measure 40 immediately faced constitutional challenges, one of which—*Armatta*—resulted in this court declaring the measure unconstitutional. At least in part in response

to the various challenges to Measure 40, the 1997 Legislature took up and eventually passed SB 936. As noted, that bill became effective June 12, 1997. We shall discuss the contents of SB 936 in greater detail later in this opinion. It is sufficient at this point to state that SB 936 contains legislative versions of certain parts of section 1 of Measure 40 that did not on their face require amendment of the Oregon Constitution. We turn to defendant's various arguments that SB 936 is not applicable to his case.

## II. CONSTITUTIONAL CHALLENGES

A. *Article IV, Section 20: Single-Subject and Title Requirements*

■        Defendant contends that SB 936 is invalid because it was enacted in violation of Article IV, section 20, of the Oregon Constitution, which governs the traditional legislative process in which a bill makes its way through the House and Senate. That section provides, in part:

> "Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title."

This case is concerned with the first sentence of Article IV, section 20. The second sentence becomes pertinent only if the legislature has not complied with the requirements of the first sentence. This court most recently discussed the first sentence of Article IV, section 20, in *McIntire v. Forbes*, 322 Or 426, 909 P2d 846 (1996), where it stated:

> "* * * [T]he first sentence of Article IV, section 20, expressly mandates that '[e]very Act shall embrace but one subject, and matters properly connected therewith'; it requires that every act shall have a title; and it expressly requires that the one subject of the Act 'shall be expressed in the title.' The first sentence thus states separate requirements for the body of an act and the title of an act, and it also connects the two requirements by establishing a relationship between the body and the title."

322 Or at 438 (footnote omitted).

Defendant first asserts that the answer in this case is controlled by *Armatta*, in which, he argues, this court held that Measure 40 — the constitutional progenitor of SB 936 — contained multiple subjects. It follows, defendant contends, that SB 936 does so as well. The parallelism for which defendant contends does not exist, however, because *Armatta* dealt with a substantively different constitutional standard.

In *Armatta*, this court considered whether Measure 40 violated the requirement in *Article XVII, section 1, of the Oregon Constitution*, that " 'two or more amendments' " to the Oregon Constitution must be " 'so submitted that each amendment shall be voted on separately.' " 327 Or at 257 (emphasis omitted; quoting Article XVII, section 1). The court explained that the test under Article XVII, section 1, is "whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related." *Id.* at 277. That is a different inquiry from an inquiry whether a measure violates the single-subject requirement of Article IV, section 20. As this court explained:

> "* * * [T]he single-subject requirement, * * * contained * * * in Article IV, section 20, * * * focuses upon the *content* of a proposed law or amendment, by requiring that it embrace only one subject and matters properly connected therewith.
>
> "The separate-vote requirement [in Article XVII, section 1], by contrast, focuses upon the form of submission of an amendment, as well as the potential *change* to the existing constitution, by requiring that two or more *constitutional amendments* be voted upon separately. That is, in addition to speaking to the form of submission, the separate-vote requirement addresses the extent to which a proposed amendment would *modify* the existing constitution. That is significantly different from the wording of the single-subject requirement, which focuses in isolation upon only the text of a proposed amendment in requiring that it embrace a single subject." .

*Id.* at 275-76 (citations omitted; emphasis in original). Furthermore,

"* * * the fact that a proposed amendment containing more than one subject would *violate* both the separate-vote and single-subject requirements does not compel the conclusion that the opposite also is true, *i.e.*, that a proposed amendment that contains only one subject would *not* violate the separate vote requirement."

*Id.* at 277 (emphasis in original).

In other words, the statements in *Armatta* regarding Measure 40 applied a different standard than the one that we consider here. *Armatta* examined Measure 40 against the framework of those constitutional provisions that the measure would have amended and considered whether the changes to those provisions were "closely related." By contrast, under Article IV, section 20, we consider the far broader question whether the provisions of SB 936 "embrace but one subject, and matters properly connected therewith." Read in context, *Armatta* does not support defendant's argument that SB 936 embraces more than one subject.

■ Article IV, section 20, was designed to serve two purposes. The requirement that the body of each act embrace a single subject and matters properly connected therewith was intended to avoid "logrolling," which this court has defined as " 'combining [unrelated] subjects representing diverse interests, in order to unite the members of the legislature who favored either, in support of all.' " *McIntire*, 322 Or at 439 (quoting *Nielson v. Bryson*, 257 Or 179, 186, 477 P2d 714 (1970)). On the other hand, the part of Article IV, section 20, relating to the title is designed to prevent deception. *See McIntire*, 322 Or at 438 ("The principal purpose for the title requirement of Article IV, section 20, is to provide fair notice to legislators (and to others) of the contents of a bill * * *." (Emphasis omitted.)). *See also Warren v. Marion County et al*, 222 Or 307, 321, 353 P2d 257 (1960) ("The restriction [of Article IV, section 20,] was intended to assure those who could not examine the body of the act itself that the act did not deal with more than its title disclosed.").

With the foregoing in mind, we turn to an analysis of the application of the "single subject" requirement to this case.

### 1. *Subject Analysis*

■ The first step in addressing a challenge under Article IV, section 20, is to consider whether the act embraces only one subject and matters properly connected with that subject.

The Court of Appeals identified that single subject in SB 936 as the "prosecution and conviction of persons who have committed criminal acts." *Fugate*, 154 Or App at 654. We would put it differently, but only slightly so. Sections 2, 3, 4, 5, 6, 7, 11, 12, 13, and part of section 20 of SB 936 directly provide various specific rights to crime victims. Sections 1, 22, 29, and 37 deal at various levels with the admissibility of evidence in criminal trials. Sections 18 and 19, and the remainder of 20, deal with release criteria respecting those accused of crimes. Sections 14, 15, 16, 17, 23, 24, 26, 27, and 32 address criminal sentencing and orders for restitution. Sections 8, 9b, 21, and 25 make various changes to the law respecting juries in criminal cases. (The remaining sections involve conforming amendments, effective dates, and the like.) We would summarize the foregoing by saying that the subject of SB 936 is the prosecution and conviction of persons accused of crime. That subject logically connects and unifies all the provisions of SB 936, including those that create, within the process of criminal law enforcement, certain legal rights for the victims of crime, and those that deal with sentencing and restitution.

Defendant argues that "victims' rights" and "criminal prosecutions" are different legislative subjects. The rights of victims may be vindicated in civil cases, defendant contends, while criminal cases involve the protection of the public, not the rights of victims. For that reason, defendant contends that SB 936 contains *two* subjects: victims' rights, and criminal procedure and sentencing. We do not accept that distinction. Both victim's rights and criminal procedure and sentencing are connected by, indeed are aspects of, the occurrence of a criminal act. There is a logical connection between what is done *for* the victim and what is done *to* the criminal.

Defendant next contends that the definition of a "subject" under Article IV, section 20, should be delimited by the possibility of "logrolling." That is, defendant suggests

that the test is whether a legislator could support one provision of an act while opposing another. If so, defendant argues, then the act involves logrolling and the statute should be construed as involving multiple subjects.

We disagree. "Logrolling" is not a constitutional term. "Subject," on the other hand, is such a term. Our holding that SB 936 embraces only one subject and matters properly connected therewith answers the pertinent question. The capacity of legislators to combine or disagree over sections, sentences, clauses, or even single words in a bill may be illimitable, but logrolling becomes a concern only when proposed legislation embraces more than one subject and matters properly connected therewith—a circumstance not presented here. Defendant's proposed rule effectively would require that each act contain but a single provision—a result that this court has rejected. *See, e.g.,* *State v. Allen*, 152 Or 422, 429-30, 53 P2d 1054 (1936) ("[W]hile the subject must be single, the provisions involved may be multifarious.").

Defendant contends, in the alternative, that SB 936 has two distinct *purposes*—to " 'protect crime victims' rights' " and " 'to ensure the prosecution and conviction of persons who have committed criminal acts.' " *Armatta*, 327 Or at 278 n 8 (emphasis omitted; quoting preamble to Measure 40). The constitutional test, however, is whether the provisions of the act embrace one "subject" and matters properly connected therewith. That test does not prohibit legislation from promoting more than one desirable purpose in the process. Defendant's proposed interpretation would prohibit the legislature from ever passing any act that promoted two or more desirable ends, even if the act involved but a single section. Such a result would inhibit legislation without promoting any of the purposes underlying Article IV, section 20. *See* *McIntire*, 322 Or at 437-38 (Article IV, section 20 "should not be so construed so as to hamper or cripple legislation * * * by a strictness unnecessary to the accomplishment of the beneficial purpose for which it was adopted" (internal quotation marks and citation omitted)).[4]

---

[4] The so-called "sin taxes" provide a good example. The legislature may choose to impose a tax on cigarettes or liquor for two purposes: to discourage the particular conduct (smoking or drinking), and to increase state revenue. It is difficult to see how the legislature could impose the tax in such a way as to promote only one of

In summary, we conclude that SB 936 embraces only a single subject and matters properly connected therewith, as required by Article IV, section 20, of the Oregon Constitution.

## 2. *Title Analysis*

■     Defendant next contends that SB 936 is unconstitutional under that part of Article IV, section 20, requiring that every act shall have a title and that the one subject of the act shall be expressed in the title. As this court explained in *McIntire*, the second sentence of Article IV, section 20,

> "* * * prescribes a consequence when all or part of the body of an act is not expressed in the title. An act 'shall be void only as to so much thereof as shall not be expressed in the title.' The second sentence thus expressly ties the title of an act to the one-subject requirement."

322 Or at 438.

■     As we already have noted, the purpose of the title requirement "is to provide fair notice to legislators (and to others) of the contents of a bill." *Id.*; *see also Warren*, 222 Or at 321 (to same effect). Accordingly, "[i]f the subject of the enactment is so expressed in the title as to give reasonable notice of the contents of the law, it is sufficient." *Lovejoy v. Portland*, 95 Or 459, 467, 188 P 207 (1920).

■■     Courts do not review titles hypertechnically. This court has stated that a title is sufficient if it "afforded sufficient warning of the subject." *Warren*, 222 Or at 323. "[A]ny expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required." *Calder et al. v. Orr et al.*, 105 Or 223, 231, 209 P 479 (1922) (internal quotation marks and citations omitted). *See also Tompkins v. District Boundary Board*, 180 Or 339, 349, 177 P2d 416 (1947) (not "necessary that the legislature adopt that which the courts may regard as the most appropriate or expressive title" (internal quotation marks and citation omitted)); *State ex rel. Pierce v. Slusher*, 119 Or 141, 151, 248 P 358 (1926) ("To entertain the notion that a better title might

those goals. Under defendant's interpretation, Article IV, section 20, would prevent the legislature from *ever* passing such a tax.

have been written is not sufficient reason for holding a title invalid.").

■ ■　　We turn to the title of SB 936. As this court has explained, the relating clause of an act serves as the title. *McIntire*, 322 Or at 445. The relating clause of SB 936 provides:

> "Relating to implementation of victims' rights initiative; creating new provisions; amending ORS 10.030, 10.050, 40.170, 40.175, 131.007, 135.230, 135.240, 135.245, 135.432, 135.970, 136.001, 136.450, 136.619, 137.106, 137.281, 137.540, 137.550, 144.108, 144.343, 419C.270, 419C.450, 421.508 and 423.478; repealing ORS 133.585 and 133.683; and declaring an emergency."

The title of SB 936 states that it "implement[s]" an "initiative" relating to "victims' rights." All those words are important.

Determining what "victims' rights initiative" the title refers to is not difficult. Article IV, section 1(2)(a), of the Oregon Constitution, provides: "The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly." An initiative, then, is a law or an amendment to the Constitution that the people propose. As noted, SB 936 became effective on June 12, 1997. At the previous general election in November 1996, the voters had adopted Measure 40. Or Laws 1997, v 1, at ix-x. The ballot title caption for Measure 40 provided: "Amends Constitution; Gives Crime Victims Rights, Expands Admissible Evidence, Limits Pretrial Release." *Id.* at x. Of the 23 measures on the ballot in November 1996, only the ballot title caption for Measure 40 contained the words "victims" and "rights." *Id.* at ix-x. The reference to "victims' rights initiative" thus provided notice to legislators and to the public that SB 936 was an effort to place into statute legislative versions of as many of the provisions of Measure 40 as could be placed there without a constitutional amendment.

Having determined what the title of SB 936 means, we must consider whether it sets out the subject of the act. We conclude that it does. As we have explained, every substantive provision of SB 936 is related to or paraphrases one

or another of the provisions of Measure 40. Defendant does not cite to us, and we have not located, any substantive provision of SB 936 that is not related to the implementation of Measure 40. Logically, if derivatively, it follows that what we said in the abstract of the subject of the act also could be said of Measure 40, *viz.*, its subject is the prosecution and conviction of persons accused of crime. Thus, the title is valid under Article IV, section 20, of the Oregon Constitution.

■ Defendant contends that the title renders SB 936 invalid because it states that the act is the "implementation" of Measure 40. Once Measure 40 was declared unconstitutional, defendant argues, SB 936 no longer was capable of "implementing" it. Defendant's argument is based on too restrictive a view of what SB 936 was intended to accomplish. As the title portrays, SB 936 amends certain statutes and creates others. The substantive content of its provisions is, as we have pointed out earlier, a legislative paraphrase of certain provisions of Measure 40. "Implement" is defined as: "to carry out: ACCOMPLISH, FULFILL * * *." *Webster's Third New Int'l Dictionary*, 1134 (unabridged ed 1993). Considered in light of that definition, SB 936 truthfully may be said to "implement," *i.e.*, carry out, accomplish, or fulfill, certain of the ideas found in certain of the provisions of Measure 40. That is all that is necessary to justify the use of the word "implementation" in the title.

Defendant contends that the title of SB 936 was deceptive because legislators and others, skimming that title, might have concluded that "victims' rights" meant that the statute related only to granting rights to victims. That argument refuses to recognize that the words, "victims' rights," are part of a phrase, *viz.*, "victims' rights initiative." That phrase is a sufficient cross-reference to the recently passed constitutional amendment that dealt, *inter alia*, with the same topics with which SB 936 deals. Put differently, Article IV, section 20, requires only that the title carry certain information; it does not relieve the reader of the obligation to read the title accurately. An observation that this court made over a century ago remains apt: "[I]f parties interested in the matter had no other source of information than that imparted by the title[ ] * * *, they would have sufficient [information] to put them upon inquiry, and could easily ascertain what

provisions had been adopted, if desirous of observing them." *State of Oregon v. Phenline*, 16 Or 107, 111, 17 P 572 (1888).

Defendant presents a number of arguments to the effect that Measure 40 actually did not grant rights to victims. Defendant notes, for example, that certain of the "rights" granted by both Measure 40 and SB 936 would apply even in cases in which there was no victim. But those criticisms miss the point: All substantive sections of SB 936 address either its subject or "matters properly connected" with the subject. That is all that is required. *See Lovejoy*, 95 Or at 466 ("It is the 'subject' of the act and not 'matters properly connected therewith' that must be expressed in the title * * *.").

Defendant also argues that SB 936 is invalid because it somehow depends on Measure 40, and this court held Measure 40 unconstitutional in *Armatta*. That argument need not delay us long. As explained, Measure 40 was declared unconstitutional because it contained multiple amendments in violation of Article XVII, section 1, of the Oregon Constitution. SB 936 does not have that problem, because it is not a constitutional amendment. The constitutionality of SB 936 under Article IV, section 20, turns on its own merits. Even if Measure 40 was not itself valid, defendant does not explain why it may not serve as a permissible referent for some other enactment, and we do not perceive any reason for so holding.

Defendant next contends that SB 936 partakes of the constitutional defects of Measure 40. We disagree. SB 936 did not depend on any power granted to the legislature by Measure 40, and there is nothing in SB 936 that is conditioned on the existence of Measure 40.

Finally, defendant contends that Article IV, section 20, required the title of SB 936 to disclose all the *purposes* of the act; that the title disclosed only the purpose of giving effect to certain of the provisions of Measure 40, not the purpose of preserving much of the essence of Measure 40 against the possibility that it might be held unconstitutional; and that the title therefore is constitutionally inadequate. Defendant's argument fails because his premise is faulty: There is

no constitutional requirement that legislation promote only one end.

In conclusion, we hold that SB 936 embraces a single subject and matters properly connected therewith, and that none of the provisions of the act exceeds the scope of the title. The act is valid under Article IV, section 20, of the Oregon Constitution. We turn to defendant's next contention, *viz.*, whether application of the terms of the act to defendant's particular case was unconstitutional.

B. *Article I, Section 21:    Oregon Ex Post Facto Clause*

Defendant contends that application of the provisions of SB 936 to his case violates the constitutional restrictions against *ex post facto* laws, set out in Article I, section 21, of the Oregon Constitution, and in Article I, section 10, of the United States Constitution.[5] As noted, the Court of Appeals disagreed, holding that section 1 of SB 936 could be applied retrospectively to defendant's case, thereby depriving him of the right to seek to have certain evidence suppressed because it was seized in violation of ORS 810.410(3)(b) (1995). For the reasons that follow, we conclude that application of ORS 136.432 (section 1 of SB 936) to defendant for crimes committed before the date that SB 936 became effective violates Article I, section 21, of the Oregon Constitution.

Although defendant makes both state and federal constitutional challenges, we first consider his argument under Article I, section 21, of the Oregon Constitution. *See State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996) (explaining that paradigm).

In *Cookman*, this court analyzed the meaning of Article I, section 21, by examining its text, the case law interpreting the provision, and the historical circumstances that underlay its creation. *Id.* at 25. We review that case in detail, because its analysis bears directly on the analysis here. The court first noted that the text "forbids the passage of laws 'after the fact.' " *Id.* at 26. "[F]rom its wording, the provision

---

[5] Article I, section 21, of the Oregon Constitution, provides, in part: "No *ex-post facto* law * * * shall ever be passed * * *." (Emphasis in original.) Similarly, Article I, section 10, of the United States Constitution, provides, in part: "No State shall * * * pass any * * * ex post facto Law * * *."

forbids only those laws that are designed to be applicable to facts that have occurred before the passage of the laws." *Id.* (emphasis omitted).

*Cookman* then turned to the case law. "Despite Article I, section 21's seemingly broad scope, this court has restricted that provision's prohibition to criminal laws, and, further, to only certain kinds of criminal laws * * *." *Id.* (citation omitted). " 'Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts.' " *Id.* (footnote omitted; quoting *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988)).

The *Cookman* court then considered the history behind the provision. The court noted that no records existed regarding the intent of the framers. 324 Or at 28. The court observed, however, that Article I, section 21, of the Oregon Constitution, appeared to have been derived from Article I, section 24, of the Indiana Constitution of 1851, which in turn was substantially similar to Article I, section 18, of the Indiana Constitution of 1816. *Id.* The court noted that the Indiana Supreme Court had construed the meaning of the 1816 clause as follows:

> " 'The words *ex post facto* have a definite, technical signification. The plain and obvious meaning of this prohibition is, that the Legislature shall not pass any law, after a fact done by any citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; or to retrench the rules of evidence, so as to make conviction more easy.' "

*Id.* (quoting *Strong v. The State*, 1 Blackf 193, 196 (1822)). Because the *Strong* court had cited to *Calder v. Bull*, 3 US (3 Dall) 386, 1 L Ed 648 (1798), the *Cookman* court turned to consideration of that case (as well as other authorities). 324 Or at 28-31.

In *Calder*, Justice Chase had set out what the *Cookman* court characterized as "his now classic formulation of the *ex post facto* prohibition":

"I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. *4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.* All these, and similar laws, are manifestly unjust and oppressive."

3 US (3 Dall) at 390-91 (second emphasis added), *quoted in Cookman*, 324 Or at 30. Regarding that statement from *Calder*, the *Cookman* court stated:

"Whatever the merits of Justice Chase's formulation with regard to the federal constitution, as with Blackstone's *Commentaries* and *The Federalist*, Chase's opinion was available to the framers of the Oregon Constitution. Perhaps more importantly, it also was cited by the Indiana Supreme Court in *Strong*, a decision that was available to the framers of the Oregon Constitution when they decided to adopt the Indiana *ex post facto* provision in our state constitution."

324 Or at 31 (footnote omitted).

Respecting the fourth category of enactments discussed in *Calder*, Justice Chase apparently conceived of alterations of the law of evidence as being *ex post facto* violations at least in part because of separation of powers concerns. Justice Chase suggested that the *ex post facto* clause was a reaction to bills of attainder and bills of pains and penalties, which he characterized as "legislative judgments; and an exercise of judicial power." 3 US (3 Dall) at 389. He then noted that some bills of attainder and bills of pains and penalties "violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which

the courts of justice would not admit * * *." 3 US (3 Dall) at 389 (footnote omitted).[6]

█    It is the last category mentioned in *Strong* and *Calder* that concerns us here, *viz.*, laws that "retrench the rules of evidence, so as to make conviction more easy." *Strong*, 1 Blackf at 196. This court's analysis in *Cookman* indicates, although it does not expressly hold, that Article I, section 21, of the Oregon Constitution, also prohibits that fourth category of *ex post facto* laws. We now hold explicitly what *Cookman* suggested: Article I, section 21, of the Oregon Constitution, forbids *ex post facto* laws of the kind that fall within the fourth category in *Strong* and *Calder*, *viz.*, laws that alter the rules of evidence in a one-sided way that makes conviction of the defendant more likely.

The state relies on *Carmell v. Texas*, 529 US 513 (2000), a recent United States Supreme Court decision interpreting the *ex post facto* clause of the United States Constitution, that suggests that the fourth category properly is understood to reach only those laws that "allow a defendant to be convicted on 'less, or different, testimony.' " *See id.* at 530 (restating fourth category as " 'less evidence required to convict' "); *id.* at 532 (finding "[a] law reducing the quantum of evidence required to convict an offender" as being squarely within the fourth category). Whatever the merits of *Carmell* as a definitive statement of the scope of the fourth category under the federal *ex post facto* clause today, *Carmell* is not correct insofar as the Oregon *ex post facto* clause is concerned. Both *Strong* and *Calder* clearly stated that the fourth

---

[6] Justice Chase's discussion of the history underlying the federal *ex post facto* clause has been challenged. *See, e.g., Satterlee v. Matthewson*, 27 US 380, 416 n (a), 2 Pet 380, 681, 7 L Ed 458 (1829) (note by Johnson, J., concurring) (strongly criticizing legal analysis in *Calder*, although for the purpose of demonstrating that *ex post facto* clause should not be limited to criminal context); Oliver P. Field, *Ex Post Facto in the Constitution*, 20 Mich L Rev 315, 321-22 (1922) (noting that debates on Federal Constitution contain "not a single mention of the practice of the British Parliament to which Justice Chase referred," though conceding that that may have been an unspoken factor). What concerns us, however, is the fact that, as the *Cookman* court recognized, *Calder* and *Strong* would have influenced what the framers of the Oregon Constitution understood by the prohibition against *ex post facto* laws. 324 Or at 31.

category forbade as a general rule a change in the rules of evidence that favored only the prosecution. Thus, in *Strong*, the court restated the fourth category as a question: "Does it change the rules of evidence as to make conviction more easy?" 1 Blackf at 197. Similarly, in *Calder*, Justice Chase restated the fourth category of *ex post facto* laws as including those that "change the rules of evidence, for the purpose of conviction." 3 US (3 Dall) at 391. Those statements were in the minds of the framers when they enacted Article I, section 21. Under their understanding, all four categories identified in *Calder* are applicable in applying Article I, section 21.

Although the state argues to the contrary, the foregoing conclusion is consistent with the result in *Gallant*, 307 Or 152. That case involved an initiative measure that the Oregon voters had passed in 1986. The initiative amended OEC 609(1) to allow the impeachment of a witness with prior convictions for crimes involving dishonesty. *Id.* at 154-55. *Gallant* held that the amendment did not violate the *ex post facto* clause. *Id.* at 155. The result in *Gallant* is consistent with the fourth category of *Strong* and *Calder*, because the amendment did not operate in such a way as to favor only the prosecution.[7]

Application of the fourth *Calder* category to the present case is straightforward. As pertinent to the present case, section 1 of SB 936, now ORS 136.432, forbids Oregon courts from suppressing evidence obtained in violation of a statute, unless suppression otherwise is required by the Oregon Constitution or the United States Constitution. As noted, SB 936 became law on June 12, 1997, but section 1 ostensibly applies "to all criminal actions pending or commenced on or after December 5, 1996 * * *." Or Laws 1997, ch 313, § 38. The legislature clearly intended that the act apply retrospectively, depriving a criminal defendant of a right to have evidence suppressed under certain conditions. We cannot conceive of a

---

[7] *See also State v. Montez*, 324 Or 343, 364, 927 P2d 64 (1996) (court rejected argument that change to law of evidence was within *ex post facto* clause; although post-*Cookman*, court did not cite fourth *Calder* category, relied only on *Gallant*, and did not cite or discuss *Cookman*). The *Montez* court's failure to speak to the fourth *Calder* category was not error, however, because the defendant was not being subjected in a second proceeding to new and different evidence that made his conviction more likely.

circumstance in which a defendant would be benefitted by the admission of evidence that otherwise would be suppressed. Section 1 thus operates only in favor of the prosecution. Application of section 1 to any case in which the crime was committed before June 12, 1997, therefore would violate the *ex post facto* clause in Article I, section 21, of the Oregon Constitution. The Court of Appeals' contrary conclusion was error.[8]

The state presented other arguments to the Court of Appeals regarding why the evidence at issue should not have been suppressed. The Court of Appeals did not reach those arguments, because it concluded that SB 936 applied to defendant's case. We therefore remand the case to the Court of Appeals to consider the state's remaining arguments.

## III. CONCLUSION

In summary, we hold that SB 936 does not violate the single subject requirement of Article IV, section 20, of the Oregon Constitution. We conclude, however, that Section 1 of SB 936, presently codified as ORS 136.432, may not be applied to crimes committed before June 12, 1997. Or Const, Art I, § 21. Accordingly, we reverse the contrary decision of the Court of Appeals and remand the case to that court for further proceedings.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

---

[8] Because Section 1 of SB 936 may not be applied to defendant, we need not consider defendant's alternative arguments regarding the federal *ex post facto* clause, separation of powers, or due process.