On respondent's petition for reconsideration filed March 5, and appellant's petition for reconsideration filed March 19; petitions for reconsideration allowed; disposition (179 Or App 740, 41 P3d 454 (2002)) withdrawn; affirmed June 5, 2002

STATE OF OREGON,
*Appellant,*

*v.*

JEFFREY J. JAEHNIG,
*Respondent.*

97NB0467; A99180

48 P3d 167

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, for appellant's petition.

David E. Groom, Public Defender, Robin A. Jones, Deputy Public Defender, for respondent's petition.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This case is before us on remand from the Supreme Court for reconsideration in light of *State v. Fugate*, 332 Or 195, 26 P3d 802 (2001). *State v. Jaehnig*, 333 Or 97, 37 P3d 980 (2001). In our original decision in the case, we reversed and remanded the trial court's order granting defendant's motion to suppress evidence. *State v. Jaehnig*, 158 Or App 348, 978 P2d 1011 (1999). After the Supreme Court's remand, we issued a per curiam decision that read, in full, "Reversed and remanded. *State v. Moylett*, 313 Or 540, 836 P2d 1329 (1992); *State v. Fugate*, 332 Or 195, 26 P3d 802 (2001)." *State v. Jaehnig*, 179 Or App 740, 41 P3d 454 (2002). Both the state and defendant petition for reconsideration of that decision. We allow the petitions for reconsideration, withdraw our former disposition, and affirm the trial court's order of suppression.

On March 18, 1997, defendant was arrested for driving under the influence of intoxicants (DUII). Because he refused to perform field sobriety tests or to submit to a breath test, the arresting officer obtained a telephonic search warrant to take a sample of defendant's blood. Defendant did not consent to the test, nor was he unconscious or otherwise incapable of consenting. The officer's actions therefore violated ORS 813.140.[1] The trial court, relying on the Supreme Court's decision in *Moylett*, granted defendant's motion to suppress evidence of the blood sample because of the statutory violation. When the case was first before us, we reversed the trial court's order on the ground that ORS 136.432, which became effective on June 12, 1997, but is expressly retroactive, changed the relevant law.[2] Because the officer obtained

---

[1] In *Moylett*, the Supreme Court interpreted ORS 813.140 to mean that a blood test may be used in a DUII prosecution only if the arresting officer asks for and obtains consent to a blood draw or, alternatively, if the arresting officer has probable cause to believe that the defendant is guilty of DUII *and* the defendant is unconscious or otherwise incapable of giving consent. *Moylett*, 313 Or at 546.

[2] ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

a search warrant, there was no constitutional violation, and defendant did not assert that any of the other statutory exceptions applied. We rejected challenges to the retroactive application of ORS 136.432. *Jaehnig,* 158 Or App at 350-54.

After our original decision in this case, the Supreme Court decided *Fugate,* in which it held that the application of ORS 136.432 to "any case in which the crime was committed before June 12, 1997," would violate the *ex post facto* clause of Article I, section 21, of the Oregon Constitution. 332 Or at 215. Generally, *ex post facto* laws punish acts that were legal at the time they were committed, change the punishment for those acts, or deprive a defendant of a defense to the charge arising out of the act. *State v. Gallant,* 307 Or 152, 155, 764 P2d 920 (1988).

In *Fugate,* the Supreme Court held that laws that change the rules of evidence in a one-sided way that makes conviction more likely also violate the state *ex post facto* clause. 332 Or at 213. It thereafter remanded this case to us for reconsideration in light of *Fugate.* On remand, we concluded that ORS 136.432 was inapplicable and that the trial court's order of suppression was correct under *Moylett,* which stated the law that existed at the time of the offense. As defendant points out, we should therefore have affirmed the trial court's suppression order. Our actual disposition, to reverse rather than to affirm, was inconsistent with the cases that we cited and incorrect under the law as we understood it. We therefore allow defendant's petition for reconsideration.

In its petition for reconsideration, the state argues that our analysis is incorrect. It points out that the alleged offense occurred after the adoption of Measure 40 (1996 general election) but before ORS 136.432 was enacted. Measure 40, which was effective on December 5, 1996, amended Article I of the Oregon Constitution and included a provision that made all relevant evidence admissible against a criminal defendant, subject to certain exceptions not applicable here. Because it provided for the admission of incriminating

---

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

evidence that would have been inadmissible under ORS 136.432, Measure 40 is arguably less favorable to a criminal defendant than is ORS 136.432. After the effective date of ORS 136.432, the Supreme Court held that Measure 40 was not adopted in compliance with constitutional provisions and was therefore invalid. *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998).

In *Fugate*, the Supreme Court held that the application of ORS 136.432 to any crime committed before the effective date of the statute would constitute an *ex post facto* violation. The state argues that *Fugate* is distinguishable from this case because defendant is alleged to have committed his offense in March 1997, before the effective date of ORS 136.432 but also before Measure 40 was declared unconstitutional. It relies on *State v. Grimes*, 163 Or App 340, 986 P2d 1290 (1999), *rev den* 332 Or 656 (2001), in which we held that the trial court properly relied on ORS 137.750, another section of the same session law that resulted in ORS 136.432.

In *Grimes*, we held that it was not an *ex post facto* violation to base a sentence on a statute that was enacted after the commission of the offense if it is ameliorative, providing defendant with more protection, not less, than was previously available under Measure 40. 163 Or App at 347. In doing so, we followed our holding in *State v. Perez*, 119 Or App 436, 851 P2d 617, *rev den* 317 Or 272 (1993), and the United States Supreme Court's holding in *Dobbert v. Florida*, 432 US 282, 97 S Ct 2290, 53 L Ed 2d 344 (1977). Relying on *Grimes*, the state concludes that ORS 136.432 is ameliorative in scope because section (1)(b) of Measure 40 purported to eliminate all exclusionary rules under the Oregon Constitution, while ORS 136.432 provides that relevant evidence shall be excluded if it is obtained in violation of the Oregon and United States constitutions.[3] It follows, according to the state, that the application of ORS 136.432 to defendant does

---

[3] The state suggests that the Supreme Court's action of holding the petition for review in *Grimes* until after it decided *Fugate* and then denying the petition rather than remanding to us for reconsideration may mean that that court agrees with our reasoning in *Grimes*. However, the denial of a petition for review means only that there were not three members of the court who voted to allow the petition. *See 1000 Friends of Oregon v. Bd. of Co. Comm.*, 284 Or 41, 584 P2d 1371 (1978). We therefore give no weight to the Supreme Court's action on the petition in *Grimes*.

not offend the constitutional prohibition against *ex post facto* laws in Article I, section 21, because it restricts the admission of incriminating evidence that otherwise would be admissible under Measure 40.

This case is controlled by what the Supreme Court said in *Fugate*. There, the court first stated that "we conclude that application of ORS 136.432 (section 1 of SB 936) to defendant for crimes committed before the date that SB 936 became effective violates Article I, section 21, of the Oregon Constitution." 332 Or at 210. It concluded its discussion by saying that

> "[w]e cannot conceive of a circumstance in which a defendant would be benefitted by the admission of evidence that otherwise would be suppressed. [ORS 136.432] thus operates only in favor of the prosecution. Application of [ORS 136.432] *to any case in which the crime was committed before June 12, 1997*, therefore would violate the *ex post facto* clause in Article I, section 21 of the Oregon Constitution." *Id.* at 214-15. (Emphasis added.)

The court's holding could not be more precise. According to the court, the application of ORS 136.432 to *any* offense committed before June 12, 1997, constitutes an *ex post facto* violation. As a result, ORS 136.432 cannot constitutionally be applied to this case under *Fugate*.[4]

Petitions for reconsideration allowed; disposition withdrawn; affirmed.

---

[4] *Fugate*'s language requires us to deny the state's petition for reconsideration. However, we note that our reasoning in *Grimes* is predicated on our holding that Measure 40 is the appropriate law for purposes of comparison for *ex post facto* analysis, even though it was *void ab initio*. *Grimes*, 163 Or at 648. It could be that the Supreme Court will eventually disagree with the reasoning in *Grimes*, if it allows review in another case with this kind of issue, or it may determine that the considerations behind the facet of the *ex post facto* prohibition involved in *Grimes* lead to a different conclusion from the consideration behind the facet involved in *Fugate* and in this case, or it could agree with the state that a different case could be factually distinguishable from *Fugate*. Regardless, the Supreme Court has already spoken on the issue raised by the state, and we are bound to follow its ruling.