Argued and submitted September 28, 2004, affirmed March 30, 2005

STATE OF OREGON,
*Respondent,*

*v.*

SCOTT DEAN HARBERTS,
*Appellant.*

CR0002110; A114825

108 P3d 1201

Eric M. Cumfer argued the cause and filed the brief for appellant.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Robert B. Rocklin, Assistant Attorney General.

Before Landau, Presiding Judge, Haselton, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction on one count of sexual abuse in the first degree. *Former* ORS 163.425 (1983), *renumbered as* ORS 163.427 (1991). He assigns error to the trial court's (1) denial of his motion to dismiss the indictment as untimely; (2) exclusion of evidence that defendant claims would have shown the bias of the complaining witness; and (3) denial of his motions in arrest of judgment proffered on the ground that the indictment did not state an offense. We affirm.

## I. FACTUAL BACKGROUND

In July 1989, defendant was arrested for the aggravated murder of Kristina Hornych. At the time, defendant was living with Kristina's father, Kevin Hornych, and Kevin's girlfriend, Sylvia, whom Kevin married a short time later. The victim in this case, CS, is Sylvia's daughter, who lived with Kevin and Sylvia part of the time.

After defendant's arrest on the murder charge, police referred the children who had lived in the house to CARES for evaluation. CS, then age 10, was among those children. During that evaluation, CS was questioned about whether defendant had sexually abused her. She said that defendant had not abused her, and the CARES evaluation reported that denial.

Meanwhile, defendant was convicted of the aggravated murder of Kristina. In September 2000, however, the Oregon Supreme Court reversed the conviction, vacated the sentence, and remanded with instructions to dismiss the indictment. *State v. Harberts*, 331 Or 72, 11 P3d 641 (2000). Shortly after that decision, CS reported to police that, in fact, defendant had sexually abused her between February 1987 and July 1989.

On October 24, 2000, a grand jury returned an indictment that alleged, in part:

"The said defendant on or between the 1st day of February, 1987 to the 14th day of July 1989, in the County

of Clackamas, State of Oregon, did unlawfully and knowingly subject [CS], a person under the age of twelve years, to sexual contact by touching her vagina, a sexual and intimate part of [CS], said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"The state further alleges that [CS] was under the age of 18 at the time of the crime and the crime was reported before [CS] attained 24 years of age.

"The state further alleges the offense was reported to a law enforcement agency or other governmental agency within the last six years."

During the dates alleged in the indictment, the applicable statute of limitations required prosecution within three years of the date on which the crime was committed. ORS 131.125(2)(a) (1987). In 1989, however, the legislature amended that statute to provide that, if the victim was under 18 years of age at the time the crime was committed, a prosecution for first-degree sexual abuse must be commenced within six years of the date on which the sexual abuse was committed. Or Laws 1989, ch 831, § 1. In 1991, the legislature again amended the statute to provide that a prosecution for first-degree sexual abuse must be commenced "anytime before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first." ORS 131.125(2)(k).

Before trial, defendant moved to dismiss the indictment on statute of limitations grounds. Defendant advanced two arguments. First, he argued that the indictment was untimely under the three-year 1987 statute of limitations that applied when the crime was committed. Subsequent amendments that extended that limitations period, he argued, cannot constitutionally be applied to him without violating the state and federal prohibitions against *ex post facto* laws. Second, and in the alternative, he argued that, even if the current version of ORS 131.125(2)(k) applies to him, the prosecution remains untimely because it occurred more than six years after the first report of sexual abuse occurred in 1989, when CARES staff first questioned the victim about possible abuse.

The state argued that the 1987 statute of limitations did not apply, having been superseded by amendments in 1989 and 1991 that extended the limitations period. The state further argued that applying the extended statute of limitations period to defendant did not offend either the state or the federal *ex post facto* prohibition. As for defendant's argument that the prosecution was untimely even under the current law, the state responded that the victim's *denial* in 1989 that defendant had abused her did not constitute a "report" that triggered the statute of limitations. According to the state, the first report of sexual abuse occurred in September 2000, only one month before the grand jury returned the indictment. The trial court denied defendant's motion.

During the trial to the court, the victim's mother, Sylvia, testified. Defense counsel questioned her about the location of a bottle of rubbing alcohol and a bloody elastic bandage that had been found at the scene of Kristina's murder. The state objected to the question on the ground of relevance, arguing that facts concerning the murder of Kristina were unrelated to the charge before the court. The state further objected that the evidence was inadmissible under OEC 403 and OEC 404.

Defense counsel replied that, indeed, he wanted to inquire about the circumstances of Kristina's murder. According to counsel, if it could be established that defendant had not killed Kristina and that, in fact, Kevin and Sylvia did, that evidence would demonstrate a motive for "the Hornych family to collude and fabricate" the sexual abuse charge against him as a way to draw attention away from themselves as suspects in Kristina's murder.

The trial court sustained the state's objection to the question concerning the alcohol and the bandage:

"[A]t this point, I don't find that the location of these wraps is relevant to the issues that we have to decide here. Any marginal relevance it's got is, you know, just as under Rule 403, is, if there is any, and I don't—I'm not even conceding that there is, that it's just going to necessitate, you know, visiting collateral issues that are not going to be helpful to the Court."

Defense counsel responded with a request to make an offer of proof. The court allowed the request. Defense counsel did not, however, make an offer of proof at that time.

The court ultimately found defendant guilty. After the court's decision—and a week after the court's ruling on the admissibility of the evidence of the rubbing alcohol and the bandage—defendant submitted an offer of proof detailing evidence that he believed demonstrated that defendant "did not murder Kristina Hornych and that Kevin and Sylvia Hornych know that [defendant] did not kill Kristina Hornych." Also after the court's decision, defendant filed two motions in arrest of judgment. In each of the two motions, defendant argued that the facts stated in the indictment did not constitute an offense. The trial court denied both motions and found defendant guilty. After a sentencing hearing, the court imposed a suspended sentence of five years' imprisonment.

## II.   DISPOSITION OF THE MERITS

### A.   *Denial of motion to dismiss on statute of limitations grounds*

Defendant first assigns error to the denial of his motion to dismiss on statute of limitations grounds. As we have noted, at trial, he advanced two arguments in support of his motion; first, that the application of the current version of ORS 131.125(2)(k) violates state and federal *ex post facto* prohibitions and, second, that, in any event, the current statute of limitations has run. On appeal, he renews both arguments.

#### 1.   Ex post facto *arguments*

We begin with defendant's *ex post facto* arguments. Article I, section 21, of the Oregon Constitution provides that "[n]o *ex post facto* law * * * shall ever be passed[.]" Article I, section 10, of the United States Constitution likewise provides that "no State shall * * * pass any * * * *ex post facto* * * * Law[.]" As usual, we start with the meaning and application of the state constitution, *State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996), although, as it turns out, there is substantial overlap in the analysis pertaining to the state and federal constitutional provisions.

### a. State *ex post facto* analysis

In *State v. Fugate*, 332 Or 195, 214, 26 P3d 802 (2001), the Oregon Supreme Court explained that Article I, section 21, of the Oregon Constitution "prohibits the application of the types of laws that the framers of the Oregon Constitution understood to be prohibited by the *Ex Post Facto* Clause of the United States Constitution." That is to say, the framers of the Oregon Constitution intended the state *ex post facto* clause to apply to whatever laws were subject to the federal counterpart as of 1857.

■ As of 1857, the federal *ex post facto* clause applied to four categories of laws, famously identified by Justice Chase in *Calder v. Bull*, 3 US (3 Dall) 386, 390-91, 1 L Ed 648 (1798):

> "I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these and similar laws are manifestly unjust and oppressive."

In *Fugate*, the Oregon Supreme Court made clear that the framers of the Oregon Constitution would have understood Article I, section 21, of the state constitution to apply to each of the four categories described in *Calder*. *Fugate*, 332 Or at 213.

In *State v. Dufort*, 111 Or App 515, 827 P2d 192 (1992), we addressed the specific issue whether an amendment extending retroactively a statute of limitations that applies to a crime falls under any of the categories of prohibited laws identified in *Calder*. We concluded that such an amendment does not offend the state or federal *ex post facto* prohibitions. We reasoned that an amendment to a statute of limitations—at least one that has not already expired—"does not punish acts that were legal at the time they occurred or

impose greater punishment." *Dufort*, 111 Or App at 520. Moreover, we explained, such an amendment "does not alter the definition of the crime nor the amount or nature of the punishment." *Id.* at 521.

Defendant acknowledges *Dufort*, but he insists that it was incorrectly decided. In particular, he argues, *Dufort* failed to address whether a retroactive extension of a statute of limitations amounts to a change in the rules of evidence to his disadvantage. According to defendant, "[u]nder the 1989 version of ORS 131.125, [defendant] could be charged and convicted only if the evidence showed that his offense occurred within three years of the date of the commission of the offense." Thus, he reasons, by extending the limitation period, the legislature changed the nature of the evidence required to convict him.

Defendant is correct that our decision in *Dufort* did not specifically address whether a retroactive extension of an unexpired statute of limitations in a criminal proceeding amounts to an unconstitutional alteration of the rules of evidence within *Calder*'s fourth category of *ex post facto* laws. But he is incorrect in arguing that the retroactive extension of an unexpired statute of limitation in fact is an impermissible alteration of the rules of evidence.

At the outset, we note that the issue was anticipated by the Court in *Calder* itself. The Court explained that the federal *ex post facto* prohibition most likely arose from concerns that the Parliament of Great Britain had claimed the authority to enact a variety of laws and apply them retroactively. Among the categories of such laws, the Court continued, were those that altered "rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit[.]" 3 US at 389.

Moreover, after setting out the now-familiar four categories of *ex post facto* laws, the Court explained that there is a difference between "retroactive" laws and *ex post facto* laws. Only the latter, he explained, are prohibited.

*Calder*, 3 US at 391. The Court then listed a number of enactments that, although clearly retroactive, nevertheless are not *ex post facto* laws, including "[e]very law that is to have an operation before the making thereof, as to commence an antecedent time; or to save time from [*i.e.*, toll] the statute of limitations[.]" *Id.*

Both statements fairly clearly suggest that retroactive alterations of an unexpired statute of limitations would not amount to a prohibited alteration of a "rule of evidence" within the meaning of the fourth *Calder* category. To be sure, the statements in *Calder* are *dicta*. But they are *dicta* with which the framers of the Oregon Constitution would have been familiar in 1857. *Fugate*, 332 Or at 213 n 6 ("What concerns us, however, is the fact that, as the *Cookman* court recognized, *Calder* * * * would have influenced what the framers of the Oregon Constitution understood by the prohibition against *ex post facto* laws.").

The Court's *dicta* in *Calder* are consistent with the ordinary meaning of the term "rules of evidence," which in the nineteenth century—as now—generally referred to the rules of admissibility or sufficiency of evidence, that is, the rules that govern *how* particular issues are proved, not rules that concern *which* issues must be proved, such as the substantive elements of crimes or defenses. *Compare, e.g.*, John Bouvier, *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union* (1839) (defining "evidence" as "that which is legally submitted to a jury to enable them to decide upon questions in dispute or issue"); Simon Greenleaf, *A Treatise on the Law of Evidence* 3 (1842) (defining "evidence" as "the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved") *with, e.g.*, *McCormick on Evidence* § 1, 2 (John William Strong ed. 1992) ("The law of evidence is the system of rules and standards by which the admission of proof at the trial of a lawsuit is regulated.").

The Oregon Supreme Court's more recent *ex post facto* cases are consistent with that understanding of the scope of the fourth *Calder* category. Thus, in *Fugate*, the court concluded that a statute expanding the extent to which

evidence obtained in violation of statutes is admissible could not be applied retroactively. The court reasoned that the retroactive application of the statute clearly altered the rules of evidence in a manner that made conviction of defendants easier. 332 Or at 213-14. Similarly, in *State v. Guzek*, 336 Or 424, 86 P3d 1106 (2004), the court held that the retroactive amendment of a statute altering the admissibility of "aggravating evidence" at a death-penalty sentencing hearing is an *ex post facto* law prohibited under *Calder*'s fourth category. In both cases, the offending statutes concerned the retroactive alteration of the rules of admissibility of evidence only.

■      Statutes of limitation are not "rules of evidence" in any ordinary sense. They do not govern admissibility or the means by which issues in contention may be proved or disproved. Instead, they are, as we noted in *Dufort*, " 'matters of legislative grace; they are a surrendering by the sovereign of its right to prosecute.' " 111 Or App at 519 (quoting *State v. Hodgson*, 108 Wash 2d 662, 667, 740 P2d 848, 851 (1987), *cert den*, 485 US 938 (1988)); *cf. Nichols v. Wilbur*, 256 Or 418, 419, 473 P2d 1022 (1970) (noting, in the context of a civil case, that, because statutes of limitations "are merely an extension of the right to bring the action," legislatures have " 'absolute power to amend the statute and alter the period of limitations' ") (quoting *Davis & McMillan v. Industrial Accident Commission*, 198 Cal 631, 636, 246 P2d 1046 (1926)).

■      Because statutes of limitations are not rules of evidence, retroactive amendments to them in criminal cases do not amount to *ex post facto* laws prohibited under *Calder*'s fourth category, at least as *Calder* would have been understood by the framers of the Oregon Constitution. *Dufort*, therefore, remains a correct statement of the meaning and scope of Article I, section 21.

Although, strictly speaking, it does not bear on our analysis of the intended meaning of Article I, section 21, it is perhaps worth noting in passing that the foregoing conclusion is consistent with the decisions of courts in most other jurisdictions that have addressed the issue. *See, e.g., State v. Creekpaum*, 753 P2d 1139, 1144 (Alaska 1988) ("[T]he extension of the statute of limitations for the offense * * * before

the original period of limitations had expired, does not violate the federal or the Alaska Constitution."); *People v. Holland*, 708 P2d 119, 120 (Colo 1985) ("[T]he legislature may extend the statute of limitations for prosecutions not already time-barred as of the effective date of the extension[.]"); *State v. Schultzen*, 522 NW2d 833, 834-35 (Iowa 1994) (same); *State v. Nunn*, 244 Kan 207, 217, 768 P2d 268, 277 (1989) (same); *Commonwealth v. Bargeron*, 402 Mass 589, 591, 524 NE2d 829, 830 (1988) (same); *Christmas v. State*, 700 So 2d 262, 267-68 (Miss 1997) (same); *State v. Thill*, 468 NW2d 643, 647 n 8 (ND 1991) (same); *State v. Johnson,* 158 Vt 344, 346, 612 A2d 1114, 1115-16 (1992) (same); *Hodgson*, 108 Wash 2d at 666, 740 P2d at 851 (same); *see also* Comment, *A Legislative Miracle: Revival Prosecutions and the Ex Post Facto Clauses*, 50 Emory LJ 397, 406 (2001) (statement that "the decided weight of precedent counsels that the mere extension of a criminal statute of limitations does not constitute a violation of the Ex Post Facto Clauses" is "very close to black-letter law").

■ The rationale of most of the cited cases is that an unexpired statute of limitations is at best an inchoate, tentative defense that affects none of a defendant's "substantive" rights. In contrast, nearly all of the cases—including *Cookman*, 324 Or at 32—conclude that the retroactive extension of an *expired* statute of limitations does amount to an impermissible *ex post facto* law because, once the statute of limitations has expired, the defendant has a complete defense to the prosecution. Laws that retroactively deprive a defendant of such a complete defense fall within the second of *Calder*'s four categories of *ex post facto* laws. In none of the cases is there a suggestion that an alteration of an unexpired statute of limitations is an amendment to a "rule of evidence."

### b. Federal *ex post facto* analysis

We turn to the question whether the retroactive extension of an unexpired statute of limitations in a criminal case nevertheless violates the federal *ex post facto* prohibition, even if it does not violate Article I, section 21, of the Oregon Constitution. Analysis of the federal *ex post facto* prohibition also focuses primarily on the meaning and significance of the four categories of *ex post facto* laws that the

Court identified in *Calder*. The principal distinction between the state and federal analyses—at least for our purposes—is that the state analysis is confined to the law as the framers of the Oregon Constitution would have understood it in 1857, while the federal analysis includes consideration of federal case law developments after that time. *Fugate*, 332 Or at 213-14. The scope of the fourth *Calder* category has not always been clear under the federal cases. For a while, it seemed that the United States Supreme Court had even abandoned the category altogether, describing *Calder* in terms of only the first two or three of the Court's listed laws. *See, e.g.*, *Collins v. Youngblood*, 497 US 37, 43, 110 S Ct 2715, 111 L Ed 2d 30 (1990) ("Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."); *Beazell v. Ohio*, 269 US 167, 169-70, 46 S Ct 68, 70 L Ed 216 (1925) ("[A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.").

■ In *Carmell v. Texas*, 529 US 513, 120 S Ct 1620, 146 L Ed 2d 577 (2000), however, the Court unambiguously revived the fourth category and reinstated the original four *Calder* categories as the definitive statement of the scope of the federal *ex post facto* clause. In *Carmell*, the Texas legislature amended retroactively a statute that previously had required corroboration of the testimony of a victim of sexual abuse; under the new law, the victim's testimony alone sufficed. The defendant challenged the retroactive application of the law on the ground that it fell within *Calder*'s fourth category of laws that alter rules of evidence in ways that permit conviction on less evidence. The court reviewed *Calder* and its historical underpinnings in some detail and, on the basis of that history, concluded that, for a retroactive alteration of a "rule of evidence" to offend the *ex post facto* prohibition, the evidentiary change must be one that alters the sufficiency-of-evidence standard or otherwise "reduces the quantum of evidence necessary to meet the burden of proof" to convict. *Carmell*, 529 US at 532-33.

■ That is a more limited reading of the scope of *Calder*'s fourth category than the Oregon Supreme Court has

given the *ex post facto* clause of Article I, section 21, of the Oregon Constitution. *See State v. Acremant*, 338 Or 302, 315, 108 P3d 1139 (2005) ("Despite that shared acceptance of *Calder*, however, this court has interpreted the Oregon Constitution as prohibiting a broader range of evidentiary changes than the United States Supreme Court has delineated for purposes of the United States Constitution."). The retroactive extension of an unexpired statute of limitations in a criminal case does not alter the sufficiency-of-evidence standard. Nor does it alter the "quantum of evidence" necessary to convict. It necessarily follows that such a law does not constitute a prohibited "rule of evidence" within the meaning of *Calder*'s fourth category of *ex post facto* laws as a matter of federal constitutional law.

To be sure, it is conceivable that the retroactive extension of an *expired* statute of limitations could be characterized as an impermissible alteration of the quantum of evidence necessary to convict, in the sense that—once the statute of limitations has expired—the quantum of evidence that otherwise would suffice would no longer. The United States Supreme Court alluded to that possibility in *Stogner v. California*, 539 US 607, 123 S Ct 2446, 156 L Ed 2d 544 (2003), in which the Court invalidated a California statute that retroactively revived an expired prosecution. The Court concluded that, once the statute of limitations expired, the defendant obtained a complete defense, which the legislative revival of the prosecution eliminated. Thus, the Court concluded, the California law ran afoul of the second *Calder* category of *ex post facto* laws because it retroactively eliminated a defense to the crime. 539 US at 612-15.

The Court noted that, although it is clear that the law fell within the second *Calder* category, the same law "may well" fall within the fourth category as well. The Court speculated that it could be asserted that "to resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a currently existing conclusive presumption forbidding prosecution." *Id.* at 616. The Court, however, expressly declined to explore the matter further. Moreover, in its discussion of the possible relevance of the fourth *Calder* category, the Court emphasized that it was referring only to retroactive revival of *expired* prosecutions. *Id.* Indeed, the

Court went to some lengths to distinguish its holding from the long line of lower court cases upholding the validity of retroactive extensions of *unexpired* statutes of limitations. *Id.* at 618-19.

■ This case, as we have noted, involves the retroactive extension of an unexpired statute of limitations. Such legislation does not fall within any of *Calder*'s four categories of prohibited *ex post facto* laws, as a matter of either state or federal constitutional law.

### 2. *Violation of ORS 131.125(2)(k)*

■ Defendant argues that, if it is constitutionally permissible to apply ORS 131.125(2)(k) to him retroactively, the indictment should have been dismissed because it is time-barred even under the new statute of limitations. According to defendant, the referral of the victim to CARES for evaluation in 1989 constituted a "report" of sexual abuse within the meaning of the statute. As a result, he concludes, the prosecution that occurred in 2000 violated the statute, which requires prosecutions to commence within six years after the offense was reported to a law enforcement agency or other governmental agency.

The state argues that, under our decision in *State v. Hutchison*, 176 Or App 363, 31 P3d 1123 (2001), an offense is not "reported" until the facts pertaining to the commission of the offense itself are communicated to a law enforcement or other governmental agency. That, the state argues, did not occur until September 2000, only one month before the grand jury returned the indictment.

We agree with the state. In *Hutchison*, we held that, under ORS 131.125(2), "the statute of limitations begins to run as to each separate offense when the facts of each separate offense have been reported." 176 Or App at 369. An offense is "reported," we explained, when there has been "actual communication of the facts that form the basis for the particular offense reported." *Id.* at 368.

In this case, the victim reported no facts to a law enforcement or other governmental agency in 1989 other than that she was *not* sexually abused. Under *Hutchison*,

that is not the sort of "report" that triggers the statute of limitations in ORS 131.125(2). The victim did make such a report in September 2000. The indictment, which issued only a month later, was not time-barred.

Defendant acknowledges that the prosecution was timely commenced under *Hutchison*, but argues that *Hutchison* was wrongly decided. Defendant offers no support for his argument in that regard other than the conclusion itself. We reject his argument without further discussion and conclude that the trial court did not err in denying his motion to dismiss on statute of limitations grounds.

B.  *Exclusion of evidence of bias*

Defendant next assigns error to the exclusion of what he broadly characterizes as "evidence regarding the motivation of the witness to fabricate the charges." He argues that he was unlawfully denied the opportunity to demonstrate that he did not kill Kristina Hornych and that "Kevin and/or Sylvia Hornych were the true perpetrators of the offense." He argues that such evidence was critical to his defense that CS's report of sexual assault had been fabricated.

The state responds that defendant's argument on appeal strays well beyond the narrow issue that was preserved at trial. According to the state, the only ruling before us is the court's decision not to permit questioning as to the location of a bottle of rubbing alcohol and an elastic bandage. The state contends that the trial court was never called upon to make a broader ruling as to the admissibility of other evidence as to who killed Kristina Hornych. As for the actual ruling on the admissibility of the bottle and the bandage, the state contends that the court's determination—that the costs of essentially retrying the murder case far outweighed the marginal relevance of the evidence—was not an abuse of discretion.

We agree with the state. To begin with, the only ruling to which defendant has assigned error is the decision to exclude evidence as to the location of a bottle of alcohol and an elastic bandage. Defendant's attempt to broaden the scope of the ruling by reference to an offer of proof produced after

trial is unavailing. *See Rudie Wilhelm W'house v. Royal Ind.*, 271 Or 701, 704, 533 P2d 1368 (1975) (an offer of proof submitted after the evidence has been completed is untimely).

We turn to the ruling itself. The trial court concluded that the location of the bottle and the bandage was not relevant to any issue in the case. In the alternative, the court concluded that, any marginal relevance the evidence might have was clearly outweighed by the costs of, in effect, retrying the murder case. Defendant insists that the location of the bottle and the bandage bear on his innocence of the murder, and, thus, inferentially, the victim's parents' culpability for the same murder, and—as a result—the victim's motivation to fabricate her report of sexual abuse. According to defendant, the bandage belonged to Kevin Hornych and was saturated in blood, but it was never examined to determine whether it was on Kevin's wrist at the time of saturation. Defendant reasons that the bandage could have been on Kevin's wrist at the time of the murder, which would establish Kevin's culpability, which in turn would establish a motive for CS, who was Kevin's wife's daughter, to fabricate her accusations against defendant.

We review the court's relevance determination as a matter of law. In reviewing the court's ruling, we are mindful that "[r]easonable inferences are permissible." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Speculation, however, is not. *Id.* In this case, defendant's string of inferences from the location of the bottle and the bandage is simply too strained to support his conclusion that the victim fabricated her testimony. The trial court did not err in concluding that the evidence was not relevant.

In any event, the trial court's alternative ruling—that any relevance of the excluded testimony was so marginal as to be outweighed by the costs of, in effect, retrying the murder case—was not an abuse of discretion. *State v. Cunningham*, 337 Or 528, 536, 99 P3d 271 (2004), *cert den*, 125 S Ct 1670 (2005) ("[T]he question whether relevant evidence should be excluded under OEC 403 because its probative value is substantially outweighed by the danger of unfair prejudice or other factors is reserved to the trial court's discretion.").

## C. *Denial of motions in arrest of judgment*

In his final assignment of error, defendant asserts that the trial court erred in denying his motions in arrest of judgment, made on the ground that the facts stated in the indictment did not constitute an offense. The key, defendant argues, is that the indictment did not allege that he committed sexual abuse on a particular date.

Defendant notes that the indictment alleged only that he committed the sexual abuse some time between February 1, 1987 and July 14, 1989. He argues that, because the Board of Parole amended its rules on July 1, 1988, so as to increase the maximum permitted board-established prison term of an indeterminate sentence, if his conduct occurred on or before July 1, 1988, his maximum possible prison term would be three to six months shorter than if the conduct occurred after July 1, 1988. Defendant reasons that, because a fact increasing the punishment is an element of the offense, the omission of the date from the indictment amounts to an omission of an element of the offense. As a result, he concludes, the indictment failed to give him adequate notice of the offense, thereby violating both state and federal due process, as well as his right to a jury trial under Article I, section 11, of the Oregon Constitution, the Sixth and Fourteenth Amendments to the United States Constitution, *see Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000); *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and the right to an indictment by a grand jury in Article VII (Amended) of the Oregon Constitution.

We emphasize that defendant does not challenge his indeterminate maximum sentence itself. Rather, defendant argues that, because the indictment omitted what he regards as an element of the offense, it was fatally defective. We reject that contention.

Initially we note that, although the described rule permitted the board to change the actual prison time served by a few months, the board was not authorized to increase the indeterminate maximum sentence beyond the statutorily prescribed maximum sentence of 10 years' imprisonment for the Class B felony of sexual abuse in the first degree. ORS

161.605(2). The board's action setting the prison term is simply not a part of the sentence imposed by the court. Thus, the exact date of the offense with which defendant was charged was not a fact that would increase his punishment beyond the statutorily prescribed maximum. We therefore reject defendant's contention that the exact date of the offense was an element of the offense that must have been pleaded and proved beyond a reasonable doubt.

Defendant advances other arguments in support of his various assignments of error. We reject them without discussion.

Affirmed.