[964 NE2d 379, 941 NYS2d 8]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant,
v SANTOS QUINTO, Appellant-Respondent.

Argued January 5, 2012; decided February 9, 2012

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Anna Pervukhin* and *Lynn W.L. Fahey* of counsel), for appellant-respondent. The trial court properly dismissed the indictment as time-barred by the statute of limitations. (*United States v Lovasco*, 431 US 783; *United States v Marion*, 404 US 307; *Railroad Telegraphers v Railway Express Agency, Inc.*, 321 US 342; *Stogner v California*, 539 US 607; *Toussie v United States*, 397 US 112; *United States v Eliopoulos*, 45 F Supp 777; *United States v Habig*, 390 US 222; *United States v Scharton*, 285 US 518; *Waters v United States*, 328 F2d 739; *United States v Raymond*, 700 F Supp 2d 142.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Seth M. Lieberman* and *Leonard Joblove* of counsel), for respondent-appellant. I. The Appellate Division correctly reversed the Supreme Court's dismissal of the counts in the indictment that charge sexual offenses. (*People v Seda*, 93 NY2d 307; *People v Hammons*, 7 Misc 3d 1028[A], 2005 NY Slip Op 50794[U]; *People v Kisina*, 14 NY3d 153; *People v Gilmour*, 98 NY2d 126; *Matter of Duell v Condon*, 84 NY2d 773; *People v Coe*, 71 NY2d 852; *People v White*, 73 NY2d 468, 493 US 859; *People v Eulo*, 63 NY2d 341; *Matter of MERSCORP, Inc. v Romaine*, 8 NY3d 90; *Matter of*

*North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745.) II. The Appellate Division erred in affirming the Supreme Court's dismissal of the counts of the indictment charging non-sexual offenses. (*People v Seda*, 93 NY2d 307; *People v Parilla*, 33 AD3d 363, 8 NY3d 654; *People v Jones*, 299 AD2d 283; *People v Jordan*, 43 AD3d 1076.)

## OPINION OF THE COURT

GRAFFEO, J.

This case calls upon us to consider the type of information that qualifies as a report of a sex crime against a child that triggers the commencement of the statute of limitations under CPL 30.10 (3) (f).

I

In New York, although class A felonies and four specified class B felony sex offenses have no limitations period (*see* CPL 30.10 [2] [a]), all other felonies are covered by a five-year statute of limitations (*see* CPL 30.10 [2] [b]). A two-year window applies to misdemeanors (*see* CPL 30.10 [2] [c]) and petty offenses must be prosecuted within one year (*see* CPL 30.10 [2] [d]).

For those crimes governed by a statute of limitations, the general rule is that the time period commences when a criminal offense is committed (*see* CPL 30.10 [2]). By the mid-1990s, there was a widespread recognition that the strictures of the limitations periods pertaining to sex offenses against children presented unique difficulties because many child victims are hesitant or fearful of disclosing such crimes, especially when the sexual abuse is committed by a family member or an individual in the child's household. In response to these concerns, new laws adding tolling provisions to the statutes of limitations for sexual offenses against children were enacted in 1996 as part of a "major step" (Letter from President of Borough of Queens, June 5, 1996, Bill Jacket, L 1996, ch 122, at 22) toward "ensur-[ing] that the law provides the highest level of protection possible to these most vulnerable victims" (Letter from Mayor of City of NY, June 5, 1996, Bill Jacket, L 1996, ch 122, at 28). These provisions were adopted based on the Legislature's recognition that

"child-victims of sex offenses cannot fully appreciate the crimes committed against them until they reach maturity; many child-victims are victimized

by parents or other persons with whom they have a close relationship, and cannot reasonably be expected to report these crimes while they remain under the sway of their abusers" (Governor's Approval Mem, Bill Jacket, L 1996, ch 122, at 13, 1996 McKinney's Session Laws of NY, at 1864; *see also* Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2085).

CPL 30.10 (3) (f) was a major component of the legislative package. It established that the statute of limitations in a prosecution of a sex offense (other than those that are not subject to any limitations period) committed against a minor does not begin to run "until the child has reached the age of eighteen or the offense is reported to a law enforcement agency or statewide central register of child abuse and maltreatment, whichever occurs earlier" (CPL 30.10 [3] [f]). Delaying the commencement of the relevant limitations period until the age of maturity was intended to "increase the likelihood that young adults, recently freed from a position of dependency, will disclose the offenses committed against them in order to seek redress through the criminal justice system" and that this would "also improve opportunities for preventing recurrences of the conduct by the perpetrator" (Letter from Council on Children and Families, June 17, 1996, Bill Jacket, L 1996, ch 122, at 18). Although majority age replaced the commission of the crime date as the general starting point for the statute of limitations, a statutory exception starts the clock running sooner. The limitations period is triggered if "the offense is reported" to the police or to the central register for child abuse. The scope of CPL 30.10 (3) (f) is the central focus of this appeal; more particularly, what constitutes a report to law enforcement for statute of limitations purposes?

## II

The child at issue in this case, whom we refer to as Jane, was 14 years old when she underwent a medical examination in November 2002 that revealed she was 12 weeks pregnant, with a conception date in August of that year. At first, Jane denied that she had been sexually active or that she was being sexually abused at home. She later claimed that she had been raped in August 2002 at school by a classmate.

Jane eventually told the investigating police officers that she had consensual, unprotected intercourse with a 14-year-old boy.

She explained that she lied about being raped because she did not want her parents to know that she was having sex. After she gave the police a written retraction of the rape accusation, the case was closed.

Jane turned 18 years of age in January 2006. Over a year later, when she was 19 years old, Jane informed the police that she had been sexually assaulted years earlier by her step-grandfather, defendant Santos Quinto. Based on this disclosure, in December 2007, defendant was charged in a felony complaint with rape and related offenses.

Jane subsequently testified before a grand jury that defendant had raped her on three different occasions in 2002 in the Brooklyn home where they resided: (1) once between May 2002 and the end of June 2002; (2) once between July 2002 and the end of August 2002; and (3) once during the month of September 2002. On at least one of those occasions, defendant purportedly threatened to rape Jane's sister if she did not submit to intercourse with him. Jane claimed that she told her grandmother (defendant's wife) about these incidents but her grandmother did not believe her. She also explained that she had kept the sexual assaults and pregnancy a secret from everyone because defendant warned her not to say anything and she was afraid of him.

The grand jury indicted defendant for numerous offenses grouped into the three distinct time periods:

1. For defendant's alleged conduct between May 1, 2002 and June 30, 2002, he was charged with: rape in the second degree (Penal Law § 130.30 [1] [a class D felony]); sexual misconduct (Penal Law § 130.20 [1] [a class A misdemeanor]); endangering the welfare of a child (Penal Law § 260.10 [1] [a class A misdemeanor]); two counts of sexual abuse in the third degree (Penal Law § 130.55 [a class B misdemeanor]); and harassment in the second degree (Penal Law § 240.26 [1] [a violation]).

2. With respect to his actions that purportedly occurred between July 1, 2002 and August 31, 2002, defendant was indicted for: rape in the second degree; rape in the third degree (Penal Law § 130.25 [3] [a class E felony]); sexual misconduct; menacing in the third degree (Penal Law § 120.15 [a class B misdemeanor]); sexual abuse in the third degree; harassment in the second degree; and endangering the welfare of a child.

3. Finally, for the period from September 1, 2002 to September 30, 2002, defendant was charged with rape in the second degree;

sexual misconduct; harassment in the second degree; and endangering the welfare of a child.

Thus, defendant was cumulatively indicted for three counts of second-degree rape; one count of third-degree rape; three counts of sexual misconduct; one count of endangering the welfare of a child; three counts of third-degree sexual abuse; one count of third-degree menacing; and three counts of second-degree harassment. He moved to dismiss the indictment in its entirety, contending that the statutes of limitations for all of the charged offenses had expired. Defendant asserted that the limitations periods began to run under CPL 30.10 (3) (f) when Jane informed the police in November 2002 that she had been raped by a classmate. Based on that commencement date, defendant argued that the statutes of limitations expired no later than November 2007 and, therefore, the charges against him were untimely as they were not initiated until December 2007.

Supreme Court agreed with defendant and dismissed the indictment, concluding that Jane had "reported" the crimes to the police in November 2002, at which time the limitations periods for the offenses were triggered pursuant to CPL 30.10 (3) (f). The court also held that another statutory toll that applies if a defendant's whereabouts are "continuously unknown and continuously unascertainable by the exercise of reasonable diligence" (see CPL 30.10 [4] [a] [ii]) was not available in this situation because the police had not conducted the investigation with due diligence.[1]

Upon the People's appeal, the Appellate Division modified by reinstating the felony and misdemeanor sex offenses (77 AD3d 76 [2d Dept 2010]). The court determined that Jane had not made a "report" related to defendant's alleged sex crimes in November 2002, which meant that the limitations periods for the sex offenses did not begin to run until Jane turned 18 in January 2006. Applying the CPL 30.10 (3) (f) tolling provision, the Appellate Division held that the commencement of the action in December 2007 was timely since the two-year statute of limitations for the misdemeanor sex offenses did not expire until January 2008, and the five-year period for the felony sex

---

1. CPL 30.10 (4) (a) (ii) specifies that, for all criminal offenses, the calculation of the amount of time that has elapsed since the offense was committed shall not include "[a]ny period . . . during which . . . the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence" provided, however, that the applicable limitations period can be extended by no more than five years.

offenses did not expire until January 2011. With regard to the non-sex offenses, however, the Appellate Division ruled that they were barred because the statutes of limitations for those offenses had expired and the "continuously unknown and continuously unascertainable" whereabouts tolling provision in CPL 30.10 (4) (a) (ii) was not applicable under the facts presented.

A Judge of this Court granted leave to both parties (15 NY3d 923 [2010]) and we now affirm.

## III

The precise issue in this case is whether the information that Jane disclosed to the police on November 8, 2002 was a "report[ ]" to the authorities that was sufficient to bar the availability of the tolling provision in CPL 30.10 (3) (f) in connection with the indictment against defendant. He contends that Jane's revelation that she became pregnant in August 2002 as a result of being raped by a classmate at school qualifies as a "report" under the statute because the police were placed on notice at that time of a potential sex crime against a minor, which required an investigation. Therefore, defendant asserts that the initial November 2002 "report" encompassed not just the sexual act that led to the pregnancy, but all of the crimes defendant allegedly committed during the three time periods charged in the indictment. And, if the statutory toll does not apply, the criminal action against him was not timely commenced and he would be entitled to dismissal of the indictment.

We disagree. To begin, the text of CPL 30.10 (3) (f) compels us to reject defendant's argument that Jane's early statements to the police encompass all three of the time periods designated in the indictment. The statute specifically refers to a report of "*the* offense" (emphasis added), not "*any* offense" (*see State v Hutchison*, 176 Or App 363, 367-368, 31 P3d 1123, 1125 [Ct App 2001]; *State v Whittington*, 144 NM 85, 89, 183 P3d 970, 974 [Ct App 2008]). The only purported crime that Jane discussed with the police in November 2002 was an alleged August 2002 rape by a classmate. Jane did not mention any other sexual conduct occurring either before or after the alleged incident. Hence, the police had no reason to believe that Jane was subjected to any criminal conduct during the first and third time periods charged in the indictment (May to June 2002 and September 2002, respectively). As a result, the statutes of limitations did not commence on the initial disclosure date—

November 8, 2002—for any of the sex offenses within those two time frames. Rather, the limitations periods for those crimes began to run when Jane turned 18 years old in January 2006. Hence, the Appellate Division correctly reinstated those counts of the indictment because the criminal action was commenced in December 2007—within the two- and five-year statutes of limitations.

We next turn to the question of whether Jane's disclosure to the police in November 2002 constituted a "report" requiring dismissal of the sex offenses occurring during the second time period identified in the indictment—July 1, 2002 to August 31, 2002. CPL 30.10 does not define the word "reported" so we must apply its ordinary and natural meaning (*see e.g. People v Versaggi*, 83 NY2d 123, 129 [1994]). "Report" is usually defined as describing or giving an account of something (*see* Webster's Third New International Dictionary, Unabridged [Merriam-Webster 2012], available at http://unabridged.merriam-webster.com). As we have explained, the term "the offense" refers to a discrete criminal act or series of acts that satisfies the elements of a particular penal statute (*see e.g. State v Hutchison*, 176 Or App at 367-368, 31 P3d at 1125). Combining these definitions, the phrase "the offense is reported" as used in CPL 30.10 (3) (f) would mean a communication that, at a minimum, describes the offender's criminal conduct and the particular harm that was inflicted on the victim. Information of this nature provides the police with actual notice that a specific criminal offense has occurred, allowing them to conduct a prompt investigation (*see generally State v Green*, 108 P3d 710, 721 [Utah 2005]; *State v Harberts*, 198 Or App 546, 559-560, 108 P3d 1201, 1209 [Ct App 2005], *review denied* 341 Or 80, 136 P3d 1123 [2006]).[2]

Considered in this manner, the information that Jane provided to the police in November 2002 certainly was a "report" but the operative question is, a report of what? The

---

2. New York is not the only state that has a reporting exception for sex offenses against children (*see e.g.* Ark Code Ann § 5-1-109 [a] [2]; Cal Penal Code § 803 [f] [1]; Fla Stat Ann § 775.15 [13] [a]; Ga Code Ann § 17-3-2.1; Mass Gen Laws Ann ch 277, § 63; Minn Stat Ann § 628.26 [e]; ND Cent Code Ann § 29-04-03.1; NM Stat Ann § 30-1-9.1; Or Rev Stat Ann § 131.125 [2]; Vt Stat Ann tit 13, § 4501 [c]; *see generally* Conn Gen Stat Ann § 54-193a [using a "notification" requirement]; *State v Hensley*, 59 Ohio St 3d 136, 140, 571 NE2d 711, 715 [1991] [statutes of limitations tolled until a person with statutory duty to report child abuse or neglect has knowledge of both the act and criminal nature of the act]).

offense she described was a rape by a classmate in a first-floor bathroom at their school in August 2002, not the forcible intercourse and sexual molestation accusations made later against her step-grandfather. The information conveyed did not provide a reasonable basis for the authorities to suspect that Jane had been sexually assaulted at home by a relative in July or August 2002. Indeed, inquiries prompted by Jane's pregnancy apparently caused her to unequivocally deny that she was being sexually abused by a family member. The "report" provision triggering the five- and two-year statutes of limitations for sex offenses under CPL 30.10 (3) (f) would have applied only to the incident that was directly derived from the information obtained from Jane—the manner, time and place that she was supposedly sexually assaulted. Since no information linked defendant to the circumstances of the reported crime, we hold that the People were entitled to apply CPL 30.10 (3) (f) and, contrary to the dissent's conclusion, the statutes of limitations for the indicted sex offenses in the second charged time period did not commence until Jane became 18 years of age.

In our view, this meaning of the phrase "the offense is reported" is consistent with the legislative history and purpose of CPL 30.10 (3) (f). The statute was based on a societal acknowledgment that victims of childhood sexual abuse who do not (or, indeed, who cannot) disclose such acts while they are minors should be given a reasonable period of time after becoming adults to divulge the abuse they suffered. Based on the ordinary meaning of the terms used in CPL 30.10 (3) (f), the legislative history of the statute and its overarching purpose, it is clear that the drafters established the age of 18 as the operative date of the limitations periods unless the police or statewide abuse register receive earlier actual notice that a child has been sexually victimized. We therefore believe that the extension of the limitations periods for sex crimes against children under CPL 30.10 (3) (f) is best accomplished by recognizing that the reporting requirement should be interpreted to cover only the specific criminal acts that are disclosed in a communication. Consequently, we hold that the triggering "report" required under the statutory exception refers to a communication that, at a minimum, describes the offender's alleged criminal conduct and the harm inflicted on the victim.

In sum, the information Jane shared with the police in November 2002 did not activate the statutes of limitations

under CPL 30.10 (3) (f) because she neither identified defendant as the perpetrator nor reported or revealed any of the sex offenses charged in the indictment. Under these facts, the statutes of limitations for the indicted sex crimes did not begin to run until Jane reached 18 years of age in January 2006. The charged sex offenses therefore are not time-barred.

## IV

Next, because defendant was also charged with non-sexual offenses not covered by CPL 30.10 (3) (f), we address the timeliness of those charges and the applicability of another tolling provision—CPL 30.10 (4) (a) (ii)—which may apply to any crime subject to a limitations period. It excludes any periods of time following the commission of an offense if "the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence." We have explained that this statute covers cases where the police are unable to identify the perpetrator of a crime despite the exercise of reasonable diligence or have identified the perpetrator but cannot find him after a diligent investigation (*see e.g. People v Seda*, 93 NY2d 307, 311 [1999]). In both scenarios, police knowledge that a crime was committed is a necessary prerequisite to the statute's application (*see People v Jordan*, 43 AD3d 1076, 1077 [2d Dept 2007]). Subdivision (4) (a) (ii) therefore operates in a manner that is quite different than subdivision (3) (f)—it excludes time only if the police are aware of a particular crime, whereas subdivision (3) (f) stops the limitations clock if the police do not know that a child has been the victim of a sex offense.

■ Because the police did not learn about the non-sex crimes charged in the indictment until Jane revealed her allegations in December 2007, we conclude that CPL 30.10 (4) (a) (ii) did not toll the time between the alleged commission of the offenses and Jane's disclosure. Consequently, the one- and two-year limitations periods that apply to the indictment's non-sexual misdemeanors and petty offenses began to run when those crimes purportedly happened in 2002, hence the timeliness for prosecution of those crimes expired in 2003 and 2004, respectively, well before the accusatory instrument was issued in this case. We agree with the Appellate Division that the non-sexual misdemeanors and petty offenses must be dismissed.

Accordingly, the order of the Appellate Division should be affirmed.

READ, J. (dissenting in part). In my view, an "offense" was "reported to a law enforcement agency" within the meaning of CPL 30.10 (3) (f) when a social worker notified the police in November 2002 that 14-year-old Jane, who was 12 weeks pregnant at the time, claimed to have been raped and impregnated by a fellow student. As a result, the second count of the indictment, which charges defendant Santos Quinto with the crime of second-degree rape during the time period of July 1, 2002 to August 31, 2002, is time-barred. I agree with the majority that the statute of limitations has not expired for the first and third counts, which charge defendant with second-degree rape at other times.

Section 30.10 (3) (f) extends the time period for commencing a prosecution for certain sex crimes against children until either "the child has reached the age of eighteen or the offense is reported to a law enforcement agency or statewide central register of child abuse and maltreatment, whichever occurs earlier." The majority stresses that the Legislature adopted this statute to insure that "victims of childhood sexual abuse who do not (or, indeed, who cannot) disclose such acts while they are minors [are] given a reasonable period of time after becoming adults to divulge the abuse they suffered" (majority op at 418). This is an undeniably accurate but incomplete explanation for section 30.10 (3) (f). After all, if the Legislature's only goal had been to give child victims of sexual abuse more time to seek redress, there would be no reporting exception at all: the statute would simply call for the period of limitations to begin at the victim's majority, the approach taken by many other states (*see e.g.* Haw Rev Stat § 701-108 [6] [c] [period of limitations in child sex abuse case begins to run when victim turns 18]; Mo Rev Stat § 556.037 [same]; Mont Code Ann § 45-1-205 [1] [b], [c] [same]; Tenn Code Ann § 40-2-101 [h], [i] [same]).

The obvious aim of the reporting exception is to prevent unduly delayed prosecutions for acts of child sexual abuse. The possibility of an erroneous conviction is minimized when a prosecution occurs while evidence is still fresh. Old claims are harder to defend against because evidence may be lost, memories may fade, witnesses may disappear. And the state, as well as defendants, has an important interest in reducing the risk of false prosecutions—a persistent worry in cases of sexual abuse, which so often devolve into a contest of "he said, she said."

The majority's interpretation of section 30.10 (3) (f), though, essentially writes the reporting exception out of the statute.

Jane was discovered to be pregnant during a visit to a health clinic in November 2002. She first denied being sexually active or having been sexually abused at home; she then claimed that she was forcibly raped by a classmate whose voice she recognized. This allegation prompted a social worker at the clinic to contact the police. Jane repeated her account to two detectives, by then accusing a classmate by name, until confronted with "inconsistencies" (unspecified in the record) in her story. She then retracted the rape accusation against her fellow student, saying that her pregnancy was instead due to unprotected consensual sex with him. The police believed this explanation—a circumstance I would expect defense counsel to explore fully if this matter goes to trial—and so investigated no further. The police report that had been filed was withdrawn.

This is not a case, then, where some general allegation of child sexual abuse was reported to the police in 2002. Rather, a specific offense—a rape causing a pregnancy—occurring at a specific time—August 2002—was reported. After investigation, the police concluded that no crime had been committed. If Jane's subsequent allegations prove to be true, this was a tragic mistake because she was allowed to remain in an abusive home for another five years.

I do not fault the police for accepting Jane's explanation of consensual sex with a fellow student. Unfortunately, this version of the cause of her pregnancy, even though she was only 14 years old, is plausible. Additionally, the police knew that Jane did not come forward willingly—her hand was forced by the sudden discovery at the health clinic of her pregnancy. If the reporting exception in section 30.10 (3) (f) has any meaning, though, the reports made to the police by the social worker and Jane are surely specific enough to qualify. Otherwise, the only "report" sufficient to start the clock running under this provision is one where the police, after investigating a specific allegation of child sexual abuse, proceed to indict someone. This cannot be what the Legislature had in mind. Rather, the exception was intended to foreclose future prosecutions of anyone where the police, having received a specific allegation of sexual abuse of a minor, elect, for whatever reason, not to pursue the matter.

Chief Judge LIPPMAN and Judges CIPARICK, SMITH, PIGOTT and JONES concur with Judge GRAFFEO; Judge READ dissents in part in a separate opinion.

Order affirmed.