Argued and submitted May 26, affirmed July 8, petition for review denied
October 26, 2004 (337 Or 555)

TROY LEE BUTLER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

A119393

94 P3d 149

Walter J. Ledesma, Deputy Public Defender, argued the cause for petitioner. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision that denied him re-release after the revocation of his parole. Petitioner raises several assignments of error. We write only to address his assertion that ORS 144.005(1) and OAR 255-075-0096, a statute and board rule that became effective after he committed the crimes for which he was originally convicted, violate the *ex post facto* provisions of the Oregon and United States constitutions. That statute and rule authorized the denial of his re-release by majority decision of a three-person board, rather than the concurrence of four members of a five-person board, as was required by a statute and rule in effect when he committed those offenses. We affirm.

In 1985, petitioner was convicted of two counts of first-degree burglary for crimes he committed in 1984. The sentencing court imposed concurrent 20-year sentences for those offenses. In February 1989, petitioner was convicted of burglary in the first degree and conspiracy to commit burglary in the first degree for crimes he committed in 1988. He was sentenced to a 20-year term on the burglary conviction to run concurrently with any previous sentence and eight years on the conspiracy conviction to run consecutively to the sentence imposed for the burglary conviction.

In December 2001, while on parole for the 1984 and 1988 offenses, petitioner was convicted of criminal mischief in the second degree and escape in the third degree. Based on those convictions, the board revoked petitioner's parole on January 9, 2002. On April 17, 2002, the board held a future disposition hearing. Two of the three members of the board were present at the hearing. The board denied petitioner re-release on the ground that he could not be adequately controlled in the community. Petitioner then sought administrative review of the order denying re-release, and the board denied that request. This petition for judicial review followed.

Petitioner asserts that the board's orders denying him re-release on parole violate the *ex post facto* prohibitions

of the Oregon and United States constitutions.[1] Petitioner reasons as follows: (1) when petitioner committed the 1984 offenses, the board consisted of five members;[2] (2) at that time, *former* OAR 254-175-090 (1979) required that four board members concur in a decision to deny re-release to a parole violator;[3] (3) in 1991, the legislature amended ORS 144.005(1) to allow at least three but not more than five members;[4] (4) at the time of petitioner's 2002 future disposition hearing, the board consisted of three members; (5) at the time of petitioner's future disposition hearing, OAR 255-075-0096(1) provided that the board could deny re-release on parole with "the affirmative vote of a majority of [its] members"; (6) only two of the three board members participated in the decision to deny petitioner re-release; and (7) the reduction in number of board members required to deny a parole violator re-release from four to two made it easier "to get consensus, and in this case increase petitioner's punishment."

Petitioner's argument thus ultimately depends on the premise that the reduction in the number of board members who could effectively deny him re-release actually increased his punishment. Petitioner relies on both the Oregon and federal *ex post facto* clauses in support of that premise. Although the Oregon Supreme Court in the past has "construe[d] these particular state and federal provisions without distinguishing them," *State v. Wille*, 317 Or 487, 502, 858 P2d 128 (1993), its constitutional methodology requires that we first consider petitioner's argument under Article I, section 21, of the Oregon Constitution. *See State v. MacNab*,

---

[1] Article I, section 21, of the Oregon Constitution provides, in part, that "[n]o *ex-post facto* law * * * shall ever be passed * * *." Article I, section 10, of the United States Constitution provides, in part, that "[n]o State shall * * * pass any * * * *ex post facto* law * * *."

[2] ORS 144.005(1) (1975), *amended by* Or Laws 1991, ch 126, § 1, provided that "[a] State Board of Parole of five members hereby is created. At least one member must be a woman."

[3] *Former* OAR 254-175-090(3) provided, in part, that "[t]he Board may deny reparole consideration and require the parole violator to serve to the end of his/her sentence upon affirmative vote of at least four voting members * * *."

[4] ORS 144.005(1) remains in effect. It provides that "[a] State Board of Parole and Post-Prison Supervision of at least three but no more than five members hereby is created. At least one member must be a woman."

334 Or 469, 474, 51 P3d 1249 (2002); *see also State v. Fugate*, 332 Or 195, 210, 26 P3d 802 (2001) (citing *State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996), for *ex post facto* analytical paradigm).

■ In *Fugate*, the court analyzed the meaning of Article I, section 21, by examining its text, the case law interpreting it, and the historical circumstances surrounding its creation. 332 Or at 210. The court concluded that, like the framers of the United States Constitution, the framers of the Oregon Constitution intended for Article I, section 21, to proscribe four categories of penal laws: those that punish acts that were legal before enactment; those that aggravate a crime to a level greater than it was before enactment; those that impose greater or additional punishment than that annexed to the crime before enactment; and those that deprive a defendant of a defense that was available before enactment. *Id.* at 214.

Petitioner here contends that ORS 144.005(1), as amended in 1991, and OAR 255-075-0096(1)—or at least the application of those provisions to this case—fall within the third category of *ex post facto* prohibitions because the statute and rule have the effect of increasing his punishment for the 1984 and 1988 offenses beyond what it otherwise would have been. The board's decision to deny a parole violator re-release must comply with that prohibition. *Peek v. Thompson*, 160 Or App 260, 266, 980 P2d 178, *rev dismissed*, 329 Or 553 (1999); *Williams v. Board of Parole*, 98 Or App 716, 720, 780 P2d 793 (1989), *rev den*, 309 Or 522 (1990).

In *MacNab*, the defendant, a convicted sex offender, argued that requiring him to register as a sex offender under a sexual offender registration act was a "further punishment" for his original offense and, as such, was forbidden by the *ex post facto* prohibitions of the Oregon and federal constitutions. The act had been passed after the defendant was convicted of the underlying crime. The court defined punishment, for purposes of Article I, section 21, as the "impos[ition] on the offender [of] some detriment, restraint, or deprivation that is intended to deter the offender and others from committing future offenses." 334 Or at 476-78.

■     The short answer to petitioner's claim under Article I, section 21, is that it founders on the definition of punishment that the court adopted in *MacNab*. Under that definition, it is insufficient merely to show that a legislative or regulatory change has imposed a detriment, restraint, or deprivation on an offender. It also is necessary to show that the action is intended to serve as a deterrent to crime. Assuming without deciding that the targeted change in the number of board members constituted a detriment, restraint, or deprivation with respect to petitioner, there is nothing in the text or context of the statute or the board's rule to suggest that the change was *intended to deter petitioner and others from committing future offenses.* Moreover, there is nothing obvious about the nature of the change that would permit us to infer that such an intent existed.

■     However, petitioner's claim deserves more deliberate consideration than that swift conclusion accords it. The court in *MacNab* did not reach the dispositive issue in this case, that is, whether an increased *risk* of prolonged incarceration—a form of punishment—can *itself* constitute increased punishment for purposes of the third *ex post facto* prohibition. That inquiry shifts the focus from legislative intent to the effect of a statutory change. Several cases that preceded *MacNab* adopted such a focus. Although those cases also predated *Fugate* and, therefore, did not apply a separate analysis under Article I, section 21, we do not believe that the court in *MacNab* necessarily intended to supplant the principles applied in them.

In *Shelby v. State Board of Parole*, 140 Or App 102, 112, 915 P2d 414, *rev den*, 324 Or 18 (1996), this court held that a statutory amendment that eliminated appellate review of certain board orders involving release dates and parole consideration hearings was procedural and did not violate the prohibition against increased punishments. Similarly, in *Howard v. Board of Parole*, 105 Or App 288, 293, 804 P2d 509, *rev den*, 311 Or 432 (1991), the petitioner challenged the application of a regulation that replaced the process of mandatory periodic parole review hearings, which existed at the time he committed his crime, with conditional reviews. We concluded that, although the challenged regulation abolished all mandatory review, it did not impose

greater punishment than the former rule. Consequently, the new rule did not offend the prohibition against *ex post facto* laws:

> "Under the former rule, petitioner's sentence was 20 years, and it remains the same under the new rule. Both the old and new rules, pursuant to ORS 144.122(1)(a), give the [b]oard discretion to reduce an inmate's prison term when it finds 'an extended course of conduct indicating outstanding reformation.' * * *
>
> "The changes regarding scheduling of review hearings are procedural. Although a review hearing is no longer automatically scheduled every three years, an inmate may have a hearing every three years, *if* the parent institution recommends one. * * * The new rule does not disadvantage petitioner, because it does not authorize greater punishment and because its abolition of mandatory hearings is merely a procedural change that does not substantially alter petitioner's rights."

*Howard*, 105 Or App at 292-93 (emphasis in original).

By contrast, *Williams v. Board of Parole*, 107 Or App 515, 812 P2d 443 (1991), *adh'd to on recons*, 112 Or App 108, 828 P2d 465, *rev dismissed*, 313 Or 300 (1992), involved a challenge to revisions in the board's "personal review" and "prison term reduction" rules. Under the rules in effect when the petitioner committed his crimes, he was entitled to mandatory review hearings after serving five years and every three years thereafter, resulting in a possible reduction of the prison term established by the board of 20 percent, or 24 months. However, under the rule promulgated after the petitioner committed his crimes, he would receive only two review hearings, yielding a possible reduction of no more than 14 months. We concluded that application of the new rule resulted in greater punishment because it "eliminate[d] petitioner's opportunity to have his prison term reduced by an additional 10 months." *Id.* at 520.

Unlike the revision in *Williams*, the amendment to ORS 144.005(1) and the promulgation of OAR 255-075-0096(1) did not eliminate an opportunity for a reduction in petitioner's board-established prison term, nor do they affect the substantive standard by which the board is to make a

re-release decision after a parole violation. In fact, petitioner does not even refer to that standard.[5] The only change is procedural, that is, whether two members of a three-person board or four members of a five-person board must vote to deny re-release to a parole violator. Petitioner has not demonstrated how that change created a significant risk that his punishment would be increased. Apart from supposition, there is no indication that petitioner now faces a greater burden in convincing the board not to deny him parole re-release, as long as the same substantive standards apply.

Thus, in addition to the absence of any indication that the legislature or board intended to increase an offender's punishment by adopting the challenged provisions, there is no evidence that those provisions have any such effect. Accordingly, the challenged statute and rule do not violate the increased punishment prohibition embodied in Article I, section 21.

■ We turn to petitioner's challenge under the United States Constitution. The United States Supreme Court has developed a two-part "intent-effects" test that it uses to determine whether legislation applied retroactively violates the federal *ex post facto* clause. *See Kansas v. Hendricks*, 521 US 346, 371, 117 S Ct 2072, 138 L Ed 2d 501 (1997) (applying intent-effects test to determine whether application of Kansas's Sexually Violent Predator Act violated federal *ex post facto* clause); *see also MacNab*, 334 Or at 482. Under the two-part test, the first inquiry is whether the legislature intended the law in question to be punitive or regulatory. That inquiry focuses on the declared purpose of the legislature. *See generally United States v. Ward*, 448 US 242, 249, 100 S Ct 2636, 65 L Ed 2d 742 (1980) (providing example). The second part of the analysis requires a determination of whether the law is so punitive in effect that it negates the legislature's regulatory intent. *Id.* With regard to the second inquiry, the Supreme Court has cautioned that when the legislature's declared purpose is regulatory, the party challenging the law must provide the "clearest proof" that the effect of the law is otherwise. *Id.* at 248-49. The Supreme Court has

---

[5] As previously stated, the board found that petitioner could not be adequately controlled in the community.

identified a number of factors that may be relevant in determining whether the effect of a law is punitive. *See Kennedy v. Mendoza-Martinez*, 372 US 144, 168-69, 83 S Ct 554, 9 L Ed 2d 644 (1963). In doing so, the Court has pointed out that the identified factors are "certainly neither exhaustive nor dispositive." *Ward*, 448 US at 249.

As discussed, petitioner here makes no credible argument that the legislature *intended*, in amending ORS 144.005(1), to punish petitioner further for his crimes. Rather, petitioner focuses on the *effect* of the change in the number of board members, that is, its posited facilitation of the board's reaching "consensus" to keep an offender behind bars.

■      A change in the process for setting a parole release date may violate the prohibition against increased punishment if it creates a "significant risk" of increasing the punishment attached to an offender's underlying offense. *Garner v. Jones*, 529 US 244, 251, 120 S Ct 1392, 146 L Ed 2d 236 (2000). The "significant risk" inquiry "cannot be embraced within a formula or stated in a general proposition," but rather is a matter of "degree." *Beazell v. Ohio*, 269 US 167, 171, 46 S Ct 68, 70 L Ed 216 (1925). Mere speculation about how a procedural change might disadvantage a prisoner is insufficient to establish an *ex post facto* violation. *Cal. Dept. of Corrections v. Morales*, 514 US 499, 508-09, 115 S Ct 1597, 131 L Ed 2d 588 (1995).

For example, in *Dobbert v. Florida*, 432 US 282, 97 S Ct 2290, 53 L Ed 2d 344 (1977), the trial court overruled the jury's recommendation of life imprisonment and imposed a sentence of death. The defendant claimed that the statute pursuant to which the trial court did so violated the *ex post facto* clause because, under the statute in effect when he committed his crime, his sentence would have been finally determined by the jury. The Supreme Court rejected that challenge, in part on the ground that the outcome under the previous statute was speculative. The court stated that "it certainly cannot be said with assurance that, had [the defendant's] trial been conducted under the old statute, the jury would have returned a verdict of life." *Id.* at 294. Like the claim of the petitioner in *Dobbert,* petitioner's assumption

here is speculative. There is no way of knowing whether the outcome of the board's re-release decision would have been different under the former structure from the decision it made under the current regime.

Garner also supports that conclusion. If we were to invalidate the challenged provisions, we would disregard the Court's admonition against "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." 529 US at 252. Indeed, where denial of re-release depends on a majority vote, many changes in the number of board members would violate the federal ex post facto clause, by changing the number of members the inmate must persuade not to deny parole. To avoid that constitutional dilemma, multiple boards would have to exist for the review of release decisions based on the date that a particular prisoner committed his or her offense. Garner stands for the proposition that such a degree of judicial fine-tuning is not appropriate or required.

■      In short, petitioner has not demonstrated that the challenged provisions created a significant risk of increased punishment that is prohibited by the United States Constitution.

Affirmed.