Argued and submitted September 5, decision of Court of Appeals affirmed
November 8, 2007

JOHN LEE SMITH,
*Petitioner on Review.*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A123105; SC S53596)

171 P3d 354

John L. Susac, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With

him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

Erin C. Lagesen, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

WALTERS, J.

## WALTERS, J.

In this case, we review a Court of Appeals order summarily affirming a decision of the Board of Parole and Post-Prison Supervision (the board) that denied petitioner reparole. We conclude that the Court of Appeals correctly relied on its own controlling precedent in deciding that petitioner did not present a substantial question of law under ORS 144.335.[1] We proceed, then, to the merits of petitioner's claims. We hold that the board's decision did not violate state or federal constitutional prohibitions against *ex post facto* laws, and we therefore affirm the decision of the Court of Appeals.

In 1988 and 1989 a trial court sentenced petitioner to prison for crimes of robbery and kidnapping, which he committed in 1987, and delivery of a controlled substance, which he committed in 1984. The board subsequently released petitioner on parole but, in 2002, revoked petitioner's parole and returned him to prison. In 2003, petitioner sought reparole.

When petitioner committed his crimes, the board consisted of five members,[2] and the administrative rules governing the board required four out of five affirmative votes to deny reparole to a prisoner in petitioner's position.[3] In 2003,

---

[1] All citations to ORS 144.335 refer to the 2001 version of the statute, which was in effect at the time of the board's decision, unless otherwise noted.

[2] ORS 144.005 (1975) provided, in part:

"(1) A State Board of Parole of five members hereby is created. At least one member must be a woman."

The legislature did not make any relevant amendments to that statute between its enactment and the commission of petitioner's crimes.

[3] Petitioner committed delivery of a controlled substance in 1984, when *former* OAR 254-175-090 (1979) provided, in part:

"(3) The Board may deny reparole consideration and require the parole violator to serve to the end of his/her sentence upon affirmative vote of at least four voting members. In cases where setting a parole violator within the guidelines of this rule would require the parole violator to serve to the end of his/her sentence, four votes are not required."

Petitioner committed robbery and kidnapping in 1987, when OAR 255-75-096 (1985) provided, in part:

"(1) The Board may deny reparole consideration and require the parole violator to serve to the statutory good time date. This action requires the affirmative vote of at least four voting members."

when petitioner sought reparole, Oregon law provided for a board of three to five members,[4] and administrative rules allowed the board to deny reparole on an affirmative vote of a majority of its members.[5] In petitioner's case, a board of three members unanimously voted to deny reparole, making findings of parole violation and aggravation.

After being denied relief on administrative review, petitioner filed a motion to proceed with judicial review in the Court of Appeals pursuant to ORS 144.335(6).[6] The court granted that motion, and petitioner filed his opening brief arguing that the board's denial of reparole by a vote of three members, as opposed to four, violated the *ex post facto* clauses of the state and federal constitutions.[7] The board then moved for summary affirmance of its decision pursuant to ORS 144.335(9),[8] contending that *Butler v. Board of Parole,* 194 Or

---

[4] ORS 144.005 was last amended in 1991 and, at the time of the board's decision, provided, in part:

"(1) A State Board of Parole and Post-Prison Supervision of at least three but no more than five members hereby is created. At least one member must be a woman."

[5] OAR 255-075-0096 was last amended in 1997 and, at the time of the board's decision, provided, in part:

"(1) Upon a finding of aggravation pursuant to Exhibit E or Exhibit H, the Board may deny rerelease on parole and set the parole release date up to two (2) days before the statutory good time date, or, in the case of murder or aggravated murder, require the parole violator to serve for life. This action requires the affirmative vote of a majority of members, except that if the result is life imprisonment, the full Board must vote unanimously."

[6] ORS 144.335(6) provided:

"Within 60 days after being served with a copy of the record, or such further time as the court may allow, the petitioner shall file a motion for leave to proceed with judicial review based on a showing in the motion that a substantial question of law is presented for review."

[7] Article I, section 21, of the Oregon Constitution provides, in part, that "[n]o *ex-post facto* law * * * shall ever be passed * * *." Article I, section 10, of the United States Constitution likewise provides, in part, that "[n]o State shall * * * pass any * * * ex post facto Law * * *."

[8] ORS 144.335(9) provided:

"At any time after submission of the petitioner's brief, the court, on its own motion or on motion of the board, without submission of the board's brief and without oral argument, may summarily affirm the board's order if the court determines that the judicial review does not present a substantial question of law. The court may deny or, if the petitioner does not oppose the motion, grant the board's motion for summary affirmance. A summary affirmance under this subsection constitutes a decision on the merits of the petitioner's issues on judicial review."

App 164, 94 P3d 149 (2004), *rev den*, 337 Or 55 (2004), was contrary to petitioner's position and, therefore, petitioner had failed to present a substantial question of law. Petitioner responded that he had attained that threshold by raising an argument that had not been previously presented to the court and that demonstrated that *Butler* should be limited in its application. The court issued an order of summary affirmance, reasoning as follows:

> "The court determines that *Butler v. Board of Parole*, 194 Or App 164, 94 P3d 149, *rev den*, 337 Or 55 (2004), controls the disposition of petitioner's assignment of error and that petitioner's attempt to distinguish *Butler* does not present a substantial question of law. The motion is granted."

We allowed petitioner's petition for review.

On review, petitioner advances three arguments. First, petitioner contends that, when existing precedent of the Court of Appeals appears to control a dispositive legal issue, petitioner nonetheless may raise a substantial question of law with respect to that issue if he "presents a soundly based, firmly supported argument suggesting that the court wrongly considered or wrongly decided the question at issue." Second, petitioner asserts that he did raise a substantial question of law in this case. Finally, petitioner sets forth his argument on the merits that the board's decision to deny reparole based on changes in rules governing board size and voting requirements violated the *ex post facto* provisions of the state and federal constitutions.

To address the issues petitioner raises regarding the order of summary affirmance, we first note the procedure that applied to judicial review of a final order of the board in 2003. At that time, the Court of Appeals was required to make a preliminary assessment of the merits of a petition for judicial review of a board decision. ORS 144.335(6). The petitioner filed a motion for leave to proceed, and, if the motion did not present "a substantial question of law," the court dismissed judicial review; otherwise the court ordered that judicial review proceed. ORS 144.335(7), (8).[9] If the court ordered

---

[9] ORS 144.335(7) provided:

"Notwithstanding ORS 2.570, the Chief Judge, or other judge of the Court of Appeals designated by the Chief Judge, may, on behalf of the Court of

that judicial review proceed, the petitioner then filed a brief on the merits. At that point, the court could summarily affirm the board's order, on its own motion or motion of the board, if it determined at that point that the judicial review did not present "a substantial question of law." ORS 144.335(9). The court could enter an order of summary affirmance without submission of the board's brief and without oral argument. ORS 144.335(9).

In 2007 the legislature eliminated the first step in that procedure, which required an order of the court before judicial review could begin. Or Laws 2007, ch 411, § 1. The legislature retained the potential for the court to issue an order of summary affirmance after the filing of the petitioner's brief.

When the Court of Appeals enters an order of summary affirmance under ORS 144.335(9), the court does not, as petitioner suggests, "dismiss judicial review." Rather, the court streamlines judicial review in that court by deciding that, for its purposes, responsive briefing by the board and oral argument by the parties are not necessary. At the point that the court enters an order of summary affirmance, petitioner has fully briefed the merits of the case. *See* ORS 144.335(9) (allowing summary affirmance "[a]t any time *after* submission of the petitioner's brief" (emphasis added)). Petitioner loses the opportunity for oral argument, but that is an opportunity that the Court of Appeals may deny litigants in any case. *See* ORAP 6.05(1) ("The court on its own motion may order a case submitted on briefs without oral argument.").

Likewise, an order of summary affirmance does not prevent petitioner from seeking review by this court. An

---

Appeals, determine whether a motion for leave to proceed with judicial review under subsection (6) of this section presents a substantial question of law and may dismiss the judicial review if the motion does not present a substantial question of law. A dismissal under this subsection constitutes a decision on the merits of the petitioner's issues on judicial review."

ORS 144.335(8) provided:

"If the Chief Judge, or other judge of the Court of Appeals designated by the Chief Judge, determines under subsection (7) of this section that the motion presents a substantial question of law, the court shall order the judicial review to proceed."

order of summary affirmance "constitutes a decision on the merits of the petitioner's issues on judicial review." ORS 144.335(9). In that respect, an order of summary affirmance is no different than a Court of Appeals decision affirming a board order without opinion. *See* ORS 19.435 (allowing this court and the Court of Appeals to decide cases by memorandum); *State v. Herried*, 3 Or App 462, 474 P2d 358 (1970) (construing *former* ORS 19.180 (1969), a predecessor to ORS 19.435, to allow Court of Appeals to decide cases without opinion). In both instances, petitioner is entitled to seek Supreme Court review of the decision of the Court of Appeals. When this court allows a petition for review, the questions before us include "all questions properly before the Court of Appeals that the petition or the response claims were erroneously decided by that court," unless we choose to limit the scope of our review. ORAP 9.20(2). Neither ORS 144.335(9) nor any other statute limits our review of an order of summary affirmance. Accordingly, on review, this court has discretion to consider the merits of all of petitioner's arguments that were properly before the Court of Appeals.

■    With that explanation in mind, we turn to petitioner's first argument, which is that petitioner raises a substantial question of law despite contrary Court of Appeals precedent if he "presents a soundly based, firmly supported argument suggesting that the court wrongly considered or wrongly decided the question at issue" in that prior case. We agree and we do not understand the board to disagree. We have interpreted the phrase "substantial question of law," used in ORS 144.335(7), to mean "a soundly based, firmly supported question capable of adjudication as to what the law is." *Atkinson v. Board of Parole*, 341 Or 382, 388, 143 P3d 538 (2006). ORS 144.335(9) uses that same phrase and we give it the same meaning. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("[U]se of the same term throughout a statute indicates that the term has the same meaning throughout the statute * * *."). However, that statement of the standard requires a slight refinement when, as here, a petitioner is faced with controlling precedent contrary to the position for which petitioner advocates. In that circumstance, the petitioner must raise not only a soundly based, firmly supported question as to "what

the law is"; petitioner also must raise a soundly based, firmly supported argument that the controlling precedent can be limited or distinguished or should be reversed. Both parties agree that that further showing is necessary.

The parties disagree, however, on the issue of which court should measure the adequacy of that showing when Court of Appeals precedent controls. Petitioner contends that this court should decide whether he presented an argument to the Court of Appeals sufficient to cause the Court of Appeals to consider limiting *Butler*. The board asserts that the Court of Appeals is entitled to decide the sufficiency of petitioner's argument in that court and that any error that the Court of Appeals commits in deciding that question is harmless, for purposes of this court's review. We agree with the board. If the Court of Appeals enters an order of summary affirmance based on controlling precedent in that court, and we are of the opinion that petitioner has presented a "soundly based, firmly supported argument" suggesting that the controlling precedent can be limited or distinguished, or should be reversed, we may reverse the order of summary affirmance. We need not do so because the Court of Appeals erred in expediting the appeal process in that court, but because the Court of Appeals was wrong on the merits. We will spend our time in this case not on the procedural question of whether the Court of Appeals should have labored longer, but on the substance of its decision.

■ The real question of import to petitioner is whether the board's decision to deny reparole violated the constitutional prohibition on *ex post facto* lawmaking. We proceed to the merits of petitioner's arguments in that respect.

Petitioner asserts that the board's reliance on rules governing board size and voting requirements that were not in effect at the time that he committed his crimes violates the *ex post facto* clause of Article I, section 21, of the Oregon Constitution. The board denied reparole based on new rules that reduced the votes required to deny reparole from a supermajority of four out of five board members to a simple majority of a smaller board, here two out of three. Petitioner argues that those new rules significantly increased the likelihood

418

that the board would deny him reparole and therefore increased the punishment for his crimes.

■ ■    Article I, section 21, provides, in part, that "[n]o *ex-post facto* law * * * shall ever be passed * * *." Generally, that clause forbids the passage of laws that punish acts that were legal at the time they occurred, make those acts a greater crime, increase the punishment for those acts, or retrench the rules of evidence to make conviction for those crimes more easy. *State v. Fugate*, 332 Or 195, 211-13, 26 P3d 802 (2001). With respect to the third category, new laws increase punishment only when they impose some greater "form of detriment, restraint, or deprivation intended primarily to deter the offender and others from committing future criminal acts." *State v. MacNab*, 334 Or 469, 479, 51 P3d 1249 (2002).

■    Petitioner acknowledges that the new rules prescribing board membership and voting requirements at issue in this case are not intended primarily to deter petitioner and others from committing future criminal acts. Nonetheless, petitioner argues, the new rules increase the punishment for the acts he committed because they increase the risk that he and others will remain incarcerated for longer than they would have under the rules in existence at the time of their criminal acts. Petitioner notes that, when the United States Supreme Court asks whether a change in parole board rules has violated the federal *ex post facto* clause, it considers the degree of that risk. The "controlling inquiry" in such cases is "whether retroactive application of the change * * * created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 US 244, 250, 120 S Ct 1392, 146 L Ed 2d 236 (2000) (quoting *Cal. Dept. of Corrections v. Morales*, 514 US 499, 509, 115 S Ct 1597, 131 L Ed 2d 588 (1995)). Petitioner invites this court to hold that, with respect to Article I, section 21, a new rule of the parole board imposes increased punishment when, regardless of the board's intent, the new rule creates a sufficient risk of increasing the length of an offender's incarceration.

In extending that invitation, petitioner does not argue that the new rules changed the substantive standards

that the board used to decide whether to grant reparole and thereby increased the risk of prolonged incarceration. Petitioner's argument is solely directed at the changes made to board composition and voting requirements. Petitioner supposes that the former rules, which required agreement by four out of five members (80 percent of the board) to deny reparole, were more likely to result in release than the new rules, which require agreement by two out of three members (66 percent of the board) to keep a prisoner incarcerated. Petitioner's argument rests on speculation and we reject it. We conclude that the changes to the board rules do not violate Article I, section 21, of the Oregon Constitution.

Petitioner also claims that the imposition of the new rules violates the federal *ex post facto* clause. Like the clause in the Oregon Constitution, the federal *ex post facto* clause prohibits legislation that makes actions criminal after the fact, or increases the punishment for those actions. *State v. Upton*, 339 Or 673, 682, 125 P3d 713 (2005); *see Stogner v. California*, 539 US 607, 611-13, 123 S Ct 2446, 156 L Ed 2d 544 (2003) (discussing the clause). The United States Supreme Court uses a two-part "intent-effects" test to determine whether a retroactively applied law inflicts "punishment," and thereby violates the *ex post facto* clause. *See Kansas v. Hendricks*, 521 US 346, 361, 117 S Ct 2072, 138 L Ed 2d 501 (1997) (applying "intent-effects" test); *MacNab*, 334 Or at 481. The first inquiry is whether the legislature intended the law in question to be punitive, and the second is whether, despite the legislature's contrary intent, the law is punitive in effect. *Hendricks*, 521 US at 361.

When the Court examines a change in parole rules to determine whether it is punitive in effect, its controlling inquiry is whether application of the change creates " 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' " *Garner*, 529 US at 250 (quoting *Morales*, 514 US at 509). A prisoner may not establish the existence of such a risk by mere speculation about how a change in the rules might make it more difficult for him to obtain release. *Morales*, 514 US at 508-09. Accordingly, some courts have held that, while a change in a parole board's voting requirements might disadvantage an inmate, the risk that the inmate's term of imprisonment will increase as a

result is too speculative to violate the *ex post facto* clause. *See, e.g., Roller v. Gunn*, 107 F3d 227 (4th Cir 1997), *cert den*, 522 US 874 (1997); *State ex rel. Cavallaro v. Groose*, 908 SW2d 133 (Mo 1995) (both illustrating proposition).

Additionally, the Court's holding in *Collins v. Youngblood*, 497 US 37, 110 S Ct 2715, 111 L Ed 2d 30 (1990), suggests that changes in a parole board's voting requirements do not come within the scope of the *ex post facto* clause at all. In *Collins*, the Court upheld the retroactive application of a Texas statute allowing the court to reform improper verdicts that assessed punishments not authorized by law. As part of its *ex post facto* analysis, the Court over-ruled *Thompson v. Utah*, 170 US 343, 18 S Ct 620, 42 L Ed 1061 (1898). *Thompson* had struck down the retroactive application of a law allowing for juries of eight persons in criminal cases, instead of juries of 12, as an *ex post facto* violation. *Collins* held that the right to a jury trial "is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the [e]x [p]ost [f]acto [c]lause." *Collins*, 497 US at 51. Therefore a law modifying the size of a jury did not come within the scope of that clause. *Id.* Some courts have cited *Collins* to support a general proposition that changes in the composition of a decision-making body, such as a parole board, are "proce-dural" and categorically do not implicate the federal *ex post facto* clause. *See Myers v. Ridge*, 712 A2d 791 (Pa Commw Ct 1998), *appeal den*, 742 A2d 173 (Pa 1999); *State ex rel. Gonzalez v. Navajo County*, 184 Ariz 103, 907 P2d 72 (Ct App 1995); *Alston v. Robinson*, 791 F Supp 569 (D Md 1992), *aff'd*, 19 F3d 10 (4th Cir 1994) (all so stating). *But see Pennsylvania Prison Society v. Rendell*, 419 F Supp 2d 651 (MD Pa 2006) (finding an *ex post facto* violation, but not discussing *Collins*); *United States ex rel. Steigler v. Board of Parole*, 501 F Supp 1077 (DC Del 1980) (finding an *ex post facto* violation based in part on *Thompson*, before it was overruled by *Collins*).

In this case, we need not reach the question whether to categorically reject petitioner's *ex post facto* challenge to the changes in the board's composition and voting require-ments under *Collins*. Petitioner concedes that the legislature and the board did not enact the applicable rule changes with

a punitive purpose and petitioner fails to do more than speculate that the new rules have a punitive effect, *i.e.*, that they create a sufficient risk of increasing the measure of punishment attached to his crimes. Accordingly, petitioner's federal *ex post facto* claim also fails.

The decision of the Court of Appeals is affirmed.